HATHAWAY, J.
At issue before this Court is the proper interpretation of MCL 600.5856(c), as amended by 2004 PA 87, effective April 22, 2004. We have been asked to consider whether a defect in a timely mailed notice of intent (NOI), provided to a medical malpractice defendant pursuant to MCL 600.2912b, precludes the tolling of the statute of limitations on a plaintiffs medical malpractice claim. We also consider whether, and under what circumstances, a plaintiff may take advantage of the 154-day statutory waiting period provided under MCL 600.2912b(8).
*161 We conclude that the 2004 amendments of MCL 600.5856 have significantly clarified the proper role of an NOI provided pursuant to MCL 600.2912b. While the former statute, MCL 600.5856(d), has been interpreted to preclude tolling when defects are found in an NOI, the current statute, § 5856(c), makes clear that the question whether tolling applies is determined by the timeliness of the NOI. Thus, if an NOI is timely, the statute of limitations is tolled despite defects contained therein. Moreover, in light of this significant clarification of § 5856, we hold that the purpose of the NOI statute is better served by allowing for defects in NOIs to be addressed in light of MCL 600.2301, which allows for amendment and disregard of “any error or defect” where the substantial rights of the parties are not affected and the cure is in the furtherance of justice. We hold that the mandates of § 2301 are met when a party makes a good-faith attempt to comply with the content requirements of § 2912b. Finally, we hold that a plaintiff may take advantage of the 154-day waiting period provided in § 2912b(8) where a defendant fails to make a good-faith attempt to reply to the plaintiffs NOI in compliance with the statutory content requirements.
We therefore affirm the Court of Appeals in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.
I. FACTS AND PROCEDURAL HISTORY
The underlying facts and procedural history of this case were well set forth by the Court of Appeals. The Court of Appeals summarized:
On August 7, 2003, Gary E. Bush (Bush), who was 33 at the time, had surgery to repair an aortic aneurysm at Spectrum Health’s Butterworth Campus. [Behrooz-Bruce] Shabahang and [John] Heiser, who are surgeons employed by [West *162 Michigan] Cardiovascular [Surgeons], performed the surgery. Plaintiff [Gary L. Bush], Bush’s guardian, claims that when Shabahang cut open Bush’s chest, he lacerated the aneurysm, which made it necessary for Heiser to cannulate Bush’s femoral artery and femoral vein so that Bush could be placed on a heart-bypass machine before the surgery could proceed. Defendants George T. Sugiyama, M.D., and M. Ashraf Man-sour, M.D., who are vascular surgeons with defendant Vascular Associates, EC., repaired Bush’s femoral artery and femoral vein, respectively. According to plaintiff, the injuries Bush suffered during the surgery and during his recovery rendered him unable to lead an independent life.
On August 5, 2005, which was just days before the expiration of the applicable period of limitations, plaintiff served a notice of intent to file a medical-malpractice complaint against Shabahang, Heiser, Sugiyama, Mansour, [West Michigan] Cardiovascular, Vascular Associates, and Spectrum Health. Sugiyama, Mansour, Vascular Associates, and Shabahang responded to plaintiffs notice as required by MCL 600.2912b(7). On January 27, 2006, which was 175 days after plaintiff served notice on defendants, plaintiff filed his complaint against all defendants.
Shortly thereafter, Sugiyama, Mansour, and Vascular Associates moved for summary disposition under MCR 2.116(C)(7), (8), and (10). They argued that dismissal was appropriate on two grounds: (1) plaintiff faded to file a notice that complied with the requirements of MCL 600.2912b, and (2) plaintiff failed to wait the required 182 days before filing his complaint. Shabahang, Heiser, and [West Michigan] Cardiovascular joined the motion. Spectrum Health later filed its own motion for summary disposition based solely on the alleged deficiency of the notice.
In response to these motions, plaintiff argued that the notice met the minimum statutory requirements. Plaintiff responded to the allegations that the complaint was prematurely filed by arguing that the responses to the notice were deficient. Because defendants’ responses to the notice were deficient, plaintiff contended that he could properly file his complaint after 154 days from the date of service of the notice. Hence, plaintiff concluded, his complaint was not prematurely filed.
*163 The trial court determined that the notice was insufficient with regard to Sugiyama, Mansour, and Vascular Associates. On the basis of that conclusion, the trial court granted summary disposition in favor of Sugiyama, Man-sour, and Vascular Associates. The trial court also granted summary disposition in favor of Spectrum Health, but only to the extent that its alleged liability was based on the actions of Sugiyama and Mansour. The trial court also granted summary disposition in favor of Spectrum Health with regard to the claims of negligence on the part of Spectrum Health’s physician assistants because plaintiff failed to file a conforming affidavit of merit. However, “[a]s to the other doctors and defendants ... the Court’s of the opinion that the [notice] is clearly sufficient, so those motions are denied.” The trial court also determined that plaintiffs complaint was not prematurely filed.[1]
Defendants appealed the trial court’s orders. The Court of Appeals consolidated defendants’ applications for leave to appeal. On May 1, 2008, the Court of Appeals issued a published opinion affirming in part, reversing in part, and remanding to the trial court for further proceedings.1 [2] The Court of Appeals held that, when read as a whole, the NOI was sufficient to comply with the requirements of MCL 600.2912b(4), except with regard to the claims of direct liability for training and supervision against West Michigan Cardiovascular. The Court also concluded that certain claims for vicarious liability against Spectrum Health were inadequately pled.[3] Accordingly, the Court of Appeals reversed the trial court’s denial of summary disposition on the deficiently pled direct liability claims and re *164 manded to the trial court for an order granting the motion for summary disposition and dismissing the claims without prejudice. The Court of Appeals affirmed the trial court’s ruling that plaintiffs complaint was timely filed, holding that plaintiff could avail himself of the shortened 154-day waiting period because the defendants’ response to the NOI was deficient. Defendant Spectrum Health’s motion for reconsideration of the opinion was denied.
Defendants filed three separate applications for leave to appeal in this Court. This Court consolidated the appeals and granted oral argument on the applications.[4] After oral argument on the applications, this Court granted leave to appeal.[5]
II. STANDARD OF REVIEW
The issues presented are issues of statutory interpretation. Statutory interpretation is a question of law, which this Court reviews de novo.[6] This Court also reviews de novo a trial court’s decision regarding a motion for summary disposition.[7]
III. ANALYSIS
A. MCL 600.5856(c) AND TOLLING
The first issue this Court is asked to address is whether the defects identified in plaintiffs NOI act to bar tolling of the statute of limitations under MCL 600.5856(c), as amended by 2004 PA 87, effective April *165 22, 2004. Our analysis necessarily begins with a review of the language of § 5856 before and after the 2004 amendments.
The relevant language of § 5856(d), the predecessor to § 5856(c),[8] provided that tolling is operative if the “notice is given in compliance with section 2912b.” (Emphasis added.) The relevant language of § 5856(c) currently provides that tolling is operative “[a]t the time notice is given in compliance with the applicable notice period under section 2912b . . . .” (Emphasis added.) The question arises whether the amendment mandates compliance with the entirety of § 2912b, such that a defective NOI does not get the benefit of tolling, or whether the new language focuses on compliance with only the applicable notice period in § 2912b, such that a defective NOI tolls the statute of limitations as long as it is compliant with the notice period.
This question was seemingly answered in Roberts v Mecosta Co Gen Hosp (Roberts I)[9] and Boodt v Borgess Med Ctr,[10] both of which held that a defect in an NOI precludes tolling of the statute of limitations during the 182-day waiting period. Roberts I opined that MCL 600.5856(d) and MCL 600.2912b were inextricably tied. The Court held that “the statute of limitations cannot be tolled under MCL 600.5856(d) unless notice is given in compliance with all the provisions of MCL 600.2912b.”* [11]
However, this holding was foundationally premised on the pre-amendment language. The Court explained:
*166 Section 5856(d) clearly provides that notice must he compliant with § 2912b, not just § 2912b(2) as plaintiff contrarily contends. Had the Legislature intended only the delivery provisions of § 2912b to be applicable, we presume that the Legislature would have expressly limited compliance only to § 2912b(2). However, the Legislature did not do so. Rather, it referred to all of § 2912b.
Since the statute is clear and unambiguous, this Court is required to enforce § 5856(d) as written. As a result, the tolling of the statute of limitations is available to a plaintiff only if all the requirements included in § 2912b are met.[12]
Significantly, Roberts I interpreted the former MCL 600.5856(d), as the amendment was not enacted until after Roberts I was decided. Boodt, while decided in 2008, made no reference to the 2004 amendment. Rather, it relied on the Roberts I interpretation of the former § 5856(d), presumably because the complaint in Boodt was filed prior to the 2004 amendment. Neither Roberts I nor Boodt addressed the question at issue here, namely, whether the current language of § 5856(c) mandates that defects in an NOI act as a bar to tolling of the statute of limitations. Since Roberts I and Boodt relied on language of a statute that is no longer in existence, examining the correct interpretation of § 5856(c) and its interrelationship with § 2912b is an issue of first impression.
The question this Court addresses is one of statutory construction. Assuming that the Legislature has acted within its constitutional authority, the purpose of statutory construction is to discern and give effect to the intent of the Legislature.[13] In determining the intent of the Legislature, this Court must first look to the lan *167 guage of the statute.[14] The Court must, first and foremost, interpret the language of a statute in a manner that is consistent with the intent of the Legislature.[15] “ ‘As far as possible, effect should be given to every phrase, clause, and word in the statute. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended.’ ”[16] Moreover, when considering the correct interpretation, the statute must be read as a whole.[17] Individual words and phrases, while important, should be read in the context of the entire legislative scheme.[18] While defining particular words in statutes, we must consider both the plain meaning of the critical word or phrase and its placement and purpose in the statutory scheme.[19] A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained.[20] The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme.[21] Moreover, courts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute.[22] *168 Finally, an analysis of a statute’s legislative history is an important tool in ascertaining legislative intent.[23]
To determine the intent of MCL 600.5856(c), we first look at its plain language. The pre-amendment version of § 5856 stated:

The statutes of limitations or repose are tolled:

(a) At the time the complaint is filed and a copy of the summons and complaint are served on the defendant.
(b) At the time jurisdiction over the defendant is otherwise acquired.
(c) At the time the complaint is filed and a copy of the summons and complaint in good faith are placed in the hands of an officer for immediate service, but in this case the statute is not tolled longer than 90 days after the copy of the summons and complaint is received by the officer.
(d) If, during the applicable notice period under section 2912b, a claim would be barred by the statute of limitations or repose, for not longer than a number of days equal to the number of days in the applicable notice period after the date notice is given in compliance with section 2912b. [Emphasis added.]
MCL 600.5856, as amended by the Legislature in 2004, states:

The statutes of limitations or repose are tolled in any of the following circumstances:

(a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.
(b) At the time jurisdiction over the defendant is otherwise acquired.
*169 (c) At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given. [Emphasis added.]
In comparing the pre- and post-amendment language, it is clear that the focus of the operative language has been clarified. Roberts I opined that the focus of § 5856(d) was on compliance with § 2912b in its entirety. In contrast, the focus of the new § 5856(c) is unquestionably limited to compliance with the “applicable notice period.”
As Roberts I pointed out, if the Legislature had intended to limit the applicability of § 2912b, it would have expressly limited compliance in the statute. The 2004 amendment of § 5856 does precisely that. It limits compliance to the notice period under § 2912b. Thus, pursuant to the clear language of § 2912b and the new § 5856(c), if a plaintiff complies with the applicable notice period before commencing a medical malpractice action, the statute of limitations is tolled.
Defendants ask us to disregard the change to the language of § 5856 and assume that the change was merely inadvertent. They urge us to interpret the amended statute in the same manner that Roberts I and Boodt interpreted the pre-amendment statute. We cannot do so. This Court cannot assume that language chosen by the Legislature is inadvertent.[24] To the contrary, this Court must assume that an express legislative change denotes either a change in the meaning of the statute itself or a clarification of the original legislative intent *170 of the statute.[25] We cannot assume that the change means nothing at all. The language of the new § 5856(c), “compliance with the applicable notice period under section 2912b,” clearly and unequivocally sets forth that a plaintiffs NOI must comply only with the applicable notice period.
In sum, neither the Roberts I nor the Boodt analysis applies in the matter before us because both analyses were based on a former version of § 5856 that is no longer in existence. The Legislature, in exercising its authority, has changed the language of the statute and we must abide by that action. Thus, we hold that, pursuant to the clear language of § 2912b and § 5856(c), if a plaintiff files a timely NOI before commencing a medical malpractice action, the statute of Hmitations is tolled despite the presence of defects in the NOI.
B. CONSEQUENCE OF A DEFECTIVE NOI
In light of the fact that a defective NOI does not bar tolling of the statute of limitations under § 5856(c), we must now consider what a court must do when presented with a defective NOI.[26]
*171 We must again begin our analysis by examining the language of the statute itself. MCL 600.2912b states in relevant part:
(1) Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.
(2) The notice of intent to file a claim required under subsection (1) shall be mailed to the last known professional business address or residential address of the health professional or health facility who is the subject of the claim. Proof of the mailing constitutes prima facie evidence of compliance with this section. If no last known professional business or residential address can reasonably be ascertained, notice may be mailed to the health facility where the care that is the basis for the claim was rendered.
(4) The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
(a) The factual basis for the claim.
(b) The applicable standard of practice or care alleged by the claimant.
(c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
(d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
*172 (e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.
(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.
(7) Within 154 days after receipt of notice under this section, the health professional or health facility against whom the claim is made shall furnish to the claimant or his or her authorized representative a written response that contains a statement of each of the following:
(a) The factual basis for the defense to the claim.
(b) The standard of practice or care that the health professional or health facility claims to be applicable to the action and that the health professional or health facility complied with that standard.
(c) The manner in which it is claimed by the health professional or health facility that there was compliance with the applicable standard of practice or care.
(d) The manner in which the health professional or health facility contends that the alleged negligence of the health professional or health facility was not the proximate cause of the claimant’s alleged injury or alleged damage.
(8) If the claimant does not receive the written response required under subsection (7) within the required 154-day time period, the claimant may commence an action alleging medical malpractice upon the expiration of the 154-day period.
The plain language of § 2912b(l) mandates that a plaintiff shall not commence an action for medical malpractice without filing a timely NOI. Notably, however, the statute is silent regarding the consequences of filing a defective NOI. The statute makes no reference whatsoever to a mandatory dismissal penalty in the *173 event of a defect. Thus, our inquiry begins with whether a mandatory dismissal with prejudice under § 2912b was the intent of the Legislature. In the absence of an express directive within the statute itself, the legislative history of § 2912b, the statute’s purpose, its placement within the broader statutory scheme, and a review of other relevant statutes are instructive guides.
A review of the legislative history reveals that the Legislature did not intend for a defect in an NOI to be grounds for dismissal with prejudice based on § 2912b. The clearest indication for this conclusion was the Legislature’s complete rejection of a mandatory dismissal clause. The statute creating NOIs was originally introduced as Senate Bill 270 on January 28, 1993.[27] NOIs were codified in what was then proposed § 2912f. Section 2912d, a proposed companion to § 2912f, contained a mandatory dismissal penalty for failure to comply with § 2912f. The bill as introduced provided:
Except as otherwise provided in this subsection, in an action alleging medical malpractice, the court shall dismiss a claim not included in the notice required under section 2912f. [Emphasis added.]
Significantly, this penalty provision did not have sufficient votes to pass. Mandatory dismissal was not the will of the Legislature. This Court has previously recognized that legislative history may be used to determine legislative intent. This Court previously held that “[w]here the Legislature has considered certain language and rejected it in favor of other language, the resulting statutory language should not be held to *174 authorize what the Legislature explicitly rejected.”[28] We can draw no conclusion from the omission of the dismissal penalty in § 2912b other than it was not the intent of the Legislature to incorporate a mandatory dismissal penalty into § 2912b.
The stated purpose of § 2912b was to provide a mechanism for “promoting settlement without the need for formal litigation, reducing the cost of medical malpractice litigation, and providing compensation for meritorious medical malpractice claims that would otherwise be precluded from recovery because of litigation costs. . . ,”[29] To hold that § 2912b in and of itself mandates dismissal with prejudice would complicate, prolong, and significantly increase the expense of liti *175 gation. Dismissal with prejudice would be inconsistent with these stated purposes.
Further, in determining legislative intent, we must look to § 2912b’s context within the broader medical malpractice statutory scheme. To do so, we examine the statute as a whole. Our review of the medical malpractice legislation indicates that it was designed as a balanced scheme, imposing equivalent requirements on both plaintiffs and defendants. Both are required to participate in the NOI process and file comparable documents.[30] Both are required to file comparable affidavits to accompany complaints and answers.[31] Both are required to meet the same expert witness qualifications.[32] In light of these comparable and balanced requirements, the penalties should likewise be comparable. It is significant that the only penalty provision included in § 2912b is very minor: a shortening of the defendant’s waiting period by 28 days.[33] In light of the minor penalty for a defendant, it would be inconsistent with the balanced approach in the legislative scheme to assume that the Legislature intended to impose on plaintiffs the harshest penalty possible: dismissal with prejudice.[34]
*176 In determining legislative intent, we should also consider other relevant statutory provisions. To that end, we consider the Revised Judicature Act (RJA) to see if other appropriate remedies exist that are consistent with the intended purpose of § 2912b. We have long recognized that the RJA does provide a mechanism to cure certain defects within pleadings in MCL 600.2301. We note that the language of § 2301 goes beyond the limited concept of amendment of “pleadings” and allows for curing of certain defects in any “process, pleading or proceeding.”
MCL 600.2301 states:
The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.
Service of an NOI is clearly part of a medical malpractice “process” or “proceeding” in Michigan.[35] Section 2912b mandates that “an action alleging medical malpractice” in Michigan “shall not commence . . . unless the person has given the health professional or health facility written notice . . . ,”[36] Since an NOI must be given before a medical malpractice claim can be filed, the service of an NOI is a part of a medical malpractice *177 “proceeding.” As a result, § 2301 applies to the NOI “process.”[37] As Justice CAVANAGH opined in his dissent in Boodt, this Court has for several decades applied MCL 600.2301 or its predecessor (which contained nearly identical language) to allow amendment of documents that, although not aptly characterized as pleadings, might well fall under the broad category of a “process” or “proceeding.”[38] Accordingly, we hold that § 2301 may be employed to cure defects in an NOI.
We recognize that § 2301 allows for amendment of errors or defects, whether the defect is in form or in substance, but only when the amendment would be “for the furtherance of justice.” Additionally, § 2301 mandates that courts disregard errors or defects when those errors or defects do not affect the substantial rights of the parties. Thus, the applicability of § 2301 rests on a two-pronged test: first, whether a substantial right of a party is implicated and, second, whether a cure is in the furtherance of justice. If both of these prongs are satisfied, a cure will be allowed “on such terms as are *178 just.”[39] Given that NOIs are served at such an early stage in the proceedings, so-called “defects” are to be expected. The statute contemplates that medical records may not have been turned over before the NOI is mailed to the defendant.[40] Defendants who receive these notices are sophisticated health professionals with extensive medical background and training. Indeed, these same defendants are allowed to act as their own reviewing experts. A defendant who has enough medical expertise to opine in his or her own defense certainly has the ability to understand the nature of claims being asserted against him or her even in the presence of defects in the NOI. Accordingly, we conclude that no substantial right of a health care provider is implicated. Further, we hold that the second prong of the test, which requires that the cure be in the furtherance of justice, is satisfied when a party makes a good-faith attempt to comply with the content requirements of § 2912b. Thus, only when a plaintiff has not made a good-faith attempt to comply with § 2912b(4) should a trial court consider dismissal of an action without prejudice.
We must now turn to the instant NOI to determine the nature of the defect and whether § 2301 may be invoked. The NOI is 13 pages long. Plaintiff made a good-faith attempt to address each of the subsections enumerated in § 2912b(4). The Court of Appeals held, and we agree, that the vast majority of plaintiffs NOI was in compliance with § 2912b(4).[41] The Court of Appeals held that the NOI was defective with respect to *179 the claims made against defendant West Michigan Cardiovascular for direct liability for training and supervision, and also with respect to the claims for direct liability asserted against Spectrum Health for its nurses and physician’s assistants. In analyzing these defects, the Court of Appeals stated:
Plaintiffs notice does not adequately address the standard of care applicable to [West Michigan] Cardiovascular under a direct theory of liability for failure to properly train or hire. The notice merely provides that [West Michigan] Cardiovascular should have hired competent staff members and properly trained them. But the notice identifies no relevant standard for determining competency or properly training staff persons. Nor can the standard be gleaned from the other sections of the notice: plaintiff failed to state how [West Michigan] Cardiovascular’s hiring and training practices violated that standard, failed to state which hiring practices or training methods it should have employed, and failed to state how those improper practices proximately caused Bush’s injuries. For this reason, to the extent that plaintiff’s claims rest on these theories, the trial court should have granted summary disposition in favor of [West Michigan] Cardiovascular.
Although plaintiffs notice alleges errors on the part of Spectrum Health’s nursing staff and physician assistants, the notice does not purport to state a separate standard of care for the nurses and physician assistants. This problem is compounded by the fact that the notice does not delineate the specific actions taken by the nursing staff or physician assistants that purportedly breached the standard of care. Rather, plaintiff’s notice generally asserts that the staff should have performed monitoring, charting, assessing, and reporting and engaged in advocacy for the patient and otherwise challenged the actions of physicians. Finally, the notice does not state the manner in which the identified breaches *180 proximately caused Bush’s injuries. Thus, even when the notice is read as a whole, it does not adequately address the standard of care applicable to Spectrum Health’s staff other than Heiser and Shabahang. For that reason, we agree with Spectrum Health that the trial court erred when it concluded that plaintiffs notice met the minimum requirements of MCL 600.2912b(4)(b) with regard to Spectrum Health’s nursing staff and physician assistants. Likewise, to the extent that plaintiff purported to give notice that Spectrum Health could be held directly liable for Bush’s injuries on the basis of the theories that it negligently hired or failed to train its staff, for the same reasons we explained with regard to [West Michigan] Cardiovascular, we conclude that the notice did not meet the requirements of MCL 600.2912b.[42]
We agree with the Court of Appeals that these omissions do constitute defects in the NOI. However, we disagree with the Court of Appeals regarding the appropriate remedy. We are not persuaded that the defects described by the Court of Appeals warrant dismissal of a claim. These types of defects fall squarely within the ambit of § 2301 and should be disregarded or cured by amendment. It would not be in the furtherance of justice to dismiss a claim where the plaintiff has made a good-faith attempt to comply with the content requirement of § 2912b. A dismissal would only be warranted if the party fails to make a good-faith attempt to comply with the content requirements.[43] Accordingly, we hold that the alleged defects can be cured pursuant to § 2301 because the substantial rights of the parties are not affected, and “disregard” or “amendment” of the defect is in the furtherance of justice when a party has made a *181 good-faith attempt to comply with the content provisions of § 2912b.[44]
C. MCL 600.2912b(7) AND DEFECTIVE RESPONSES TO AN NOI
Next, given that the Court of Appeals held that Shabahang’s response to plaintiffs NOI was defective because it did not meet the requirements of MCL 600.2912b(7), the question arises whether plaintiff was required to wait the full 182-day period before filing his medical malpractice action, or whether he could avail himself of the shortened 154-day period. Our analysis again begins by examining the text of MCL 600.2912b(7).[45] The statute is clear that a defendant must provide the plaintiff with a written response within 154 days of receipt of the NOI. This provision is mandatory. The response must include a statement of the factual basis for the defense, the standard of care that the health professional claims applies, the manner in which it is claimed that the health professional complied with the standard of care, and the manner in which the health professional contends that the alleged negligence was not the proximate cause of the plaintiffs injuries. If the plaintiff does not receive the written response required under MCL 600.2912b(7) within the 154-day waiting period, the plaintiff may file suit after the 154-day waiting period has expired.[46]
*182 According to the Court of Appeals, Shabahang’s response was defective and did not comply with the statute. Despite this response, Shabahang argues that plaintiff was still required to wait the full 182-day waiting period before filing suit because plaintiff received a response to the NOI. Plaintiff, on the other hand, argues that because the notice did not meet the requirements of § 2912b(7), it was proper to commence his suit upon the expiration of the 154-day period, as allowed under MCL 600.2912b(8). Shabahang counters that plaintiff could not unilaterally determine that the response was inadequate, contending that a judge must adjudicate the issue before plaintiff may file the complaint early.
Once again we turn to the standards set forth in § 2301 for guidance. Section 2301 similarly allows for “amendment” or “disregard” of defects in responses to NOIs, as long as the cure is in the furtherance of justice and does not affect the substantial rights of the parties. Significantly, defendants must make a good-faith attempt to comply with the content requirements of the statute to avail themselves of § 2301.
Shabahang’s one-page response to the NOI was utterly lacking in a good-faith attempt to comply. The entire substantive portion of Shabahang’s response stated:
1. FACTUAL BASIS FOR DEFENSE TO CT .ATM
The medical records involved in this case, together with deposition testimony, will form the primary defense to this case. Briefly, Dr. Shabahang contends that he *183 properly evaluated, assessed and treated Gary Bush. The actions of Dr. Shabahang were well within the standard of care.
2. STANDARD OF PARE AND COMPLIANCE
The standard of care required Dr. Shabahang to do things demonstrated in the medical records, which may be further augmented by deposition testimony. At all times, he acted within the standards of care in his care and treatment of Gary Bush.
3. MANNER OF COMPLIANCE
See § 2 above. The manner in which Dr. Shabahang complied with the applicable standard of care is outlined in the medical records, and will be further augmented by sworn deposition testimony.
4. PROXIMATE CAUSE
It is the position of Dr. Shabahang that his actions did not within a reasonable degree of medical probability contribute in any way to the complications alleged by Gary Bush. Additionally, it is the position of Dr. Shabahang that the current medical condition of Gary Bush was not in any way caused or contributed by the activities of Dr. Shabahang.
Shabahang was required to make a general statement of the factors contained in § 2912b(7). He failed to do so. Shabahang’s response is nothing more than a blanket denial of any wrongdoing. Indeed, Shabahang himself does not defend his efforts or the content of the response in his arguments to this Court. Rather, defendant takes the position that the content of the response is irrelevant. We disagree. The purpose of the NOI waiting period is to provide a cost-saving method to *184 resolve meritorious claims. If a defendant does not wish to use that process, the plaintiff is entitled to accelerate the filing of the complaint. A defendant can either advise the plaintiff of the decision to waive[47] or the defendant may do nothing at all, either of which triggers the shortened waiting period. However, we cannot allow a defendant to so flagrantly disregard the process and fail to make a good-faith attempt to comply, yet still take advantage of the full waiting period. As Shabahang did not make a good-faith attempt to comply with § 2912b(7), he cannot avail himself of either § 2301 or the full 182-day waiting period.
This result is fully consistent with the statutory NOI scheme. It makes little sense to continue a settlement period when one party has indicated that he or she has no interest in settlement. When a defendant has made little or no attempt to comply with the statute, we will not afford the same benefits as if he or she had made an attempt to comply.
Finally, defendant asserts that plaintiff does not have the right to unilaterally make a determination on the validity of a response. We agree with the Court of Appeals that a plaintiff who unilaterally makes such a decision does so at his or her own peril. If a court ultimately determines that the response is not defective, plaintiffs complaint may be deemed untimely. However, given the limited time period involved, it would be virtually impossible for a Court to adjudicate this issue on a timely basis. By the time the parties could schedule a hearing and brief the issue, the shortened time period afforded by § 2912b would be lost. Therefore, we agree with the Court of Appeals that a plaintiff may choose to make his own determination *185 regarding the sufficiency of a response, but he does so at the risk of having a court later determine that the defendant’s response was indeed adequate. We conclude that § 2912b(7) allows a plaintiff to file a complaint early if the defendant’s response to the NOI is defective.
IV CONCLUSION
We hold that pursuant to MCL 600.5856(c), as amended by 2004 PA 87, effective April 22, 2004, when an NOI is timely, the statute of limitations is tolled despite defects contained therein. Moreover, in light of the legislative clarification of § 5856(c), we hold that the purpose of the NOI statute is better served by allowing for defects in NOIs to be addressed in light of § 2301, which permits “amendment” or “disregard” of “any error or defect” where the substantial rights of the parties are not affected, as long as the cure is in the furtherance of justice and on terms that are just. A cure is in the furtherance of justice when a party makes a good-faith attempt to comply with the content requirements of § 2912b. Finally, we hold that a plaintiff may take advantage of the 154-day waiting period provided in § 2912b (8) where a defendant fails to make a good-faith attempt to reply to the plaintiffs NOI in compliance with the statutory content requirements.
We therefore affirm the Court of Appeals in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.
Kelly, C.J., and Cavanagh, and Weaver, JJ., concurred with Hathaway, J.

 Bush v Shabahang, 278 Mich App 703, 706-708; 753 NW2d 271 (2008).

 Id. at 726-727.

 The Court of Appeals held that the claims for vicarious liability for the physician’s assistants and the nursing staff were inadequately pled, but the claims against Heiser and Shabahang were sufficient.

 Bush v Shabahang, 482 Mich 1014 (2008).

 Bush v Shabahang, 482 Mich 1105 (2008).

 In re Investigation of March 1999 Riots in East Lansing, 463 Mich 378, 383; 617 NW2d 310 (2000).

 Herald Co v Bay City, 463 Mich 111, 117; 614 NW2d 873 (2000).

 The former § 5856(d) was renumbered by the amendment and now appears as § 5856(c).

 Roberts v Mecosta Co Gen Hosp, 466 Mich 57, 642 NW2d 663 (2002).

 Boodt v Borgess Med Ctr, 481 Mich 558, 561; 751 NW2d 44 (2008).

 Roberts I, 466 Mich at 59.

 Id. at 64.

 Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999).

 Id.

 Id.

 Herman v Berrien Co, 481 Mich 352, 366; 750 NW2d 570, 579 (2008), quoting Sun Valley, 460 Mich at 237.

 Sun Valley, 460 Mich at 237.

 Herman, 481 Mich at 366.

 Id., quoting Bailey v United States, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

 Wayne Co v Auditor General, 250 Mich 227, 233; 229 NW 911 (1930).

 Id. at 234.

 See Lawrence Baking Co v Unemployment Compensation Comm, 308 Mich 198, 205; 13 NW2d 260 (1944).

 See In re MCI Telecom Complaint, 460 Mich 396, 415; 596 NW2d 164 (1999).

 Lawrence Baking, 308 Mich at 205.

 Id. See also Ettinger v City of Lansing, 215 Mich App 451; 546 NW2d 652 (1996), wherein Justice Markman, then sitting at the Court of Appeals and joined by then-Judge CORRIGAN, opined:
We note that plaintiffs correctly state the general proposition that changes in statutory language presumably reflect a change in meaning. Wortelboer v Benzie Co, 212 Mich App 208, 217; 537 NW2d 603 (1995). However, changes in statutory language may reflect an attempt to clarify the meaning of a provision rather than change it. Id.; see also Evans v Hebert, 203 Mich App 392, 403; 513 NW2d 164 (1994).

 The Boodt Court opined that because no tolling was afforded in the presence of a defect pursuant to § 5856(d), the plaintiffs action was not commenced under § 2912b(l). Boodt, 481 Mich at 562-563. Our analysis today explains that the Legislature has made it clear that a defective NOI *171 does not preclude tolling of the statute of limitations for cases bought under § 5856(c). As a result, whether a medical malpractice action is commenced for purposes of § 5856(a) does not depend on the presence or absence of defects within the NOI.

 This bill was introduced in the Senate by Senators DeGrow, Van Regenmorter, Gast, Cisky, Welborn, Wartner, Emmons, Schwarz, Ehlers, Geake, Arthurhultz, DiNello, Koivisto, Bouchard, Dunaskiss, Pridnia, and McManus.

 In re MCI Telecom Complaint, 460 Mich at 415. Similarly, Univ Med Affiliates, PC v Wayne Co Executive, 142 Mich App 135, 140; 369 NW2d 277 (1985), held that the legislative history of a statute may be considered and, where it can he shown that certain language was affirmatively rejected, the court should not give the statute a construction that the Legislature plainly refused to give. As the Court explained in In re MCI Telecom Complaint:
[W]e find the meaning of [MCL 484.2312a], standing alone, to be unambiguous on its face. The statutory language clearly requires that, should interLATA prohibitions be removed, Ameritech must provide intraLATA toll dialing parity. There is, however, nothing on the face of this statute, or within the language enacted by the Legislature, that would hold the reverse to be true. Indeed, where the Legislature specifically considered language authorizing such a linkage, and rejected it, the Court of Appeals clearly erred in holding that the statute inextricably linked intraLATA and interLATA toll dialing parity. [In re MCI Telecom Complaint, 460 Mich at 415-416.]
See also Nation v WDE Electric Co, 454 Mich 489, 492-493, 495; 563 NW2d 233 (1997); Miller v State Farm Mut Automobile Ins Co, 410 Mich 538, 566; 302 NW2d 537 (1981); and People v Adamowski, 340 Mich 422, 429; 65 NW2d 753 (1954).

 Senate Legislative Analysis, SB 270, August 11, 1993; House Legislative Analysis, HB 4403 to 4406, March 22, 1993.

 See MCL 600.2912b.

 See MCL 600.2912d and MCL 600.2912e.

 MCL 600.2169.

 MCL 600.2912b(8).

 Given the Legislature’s clear rejection of dismissal as a penalty in § 2912b, and its amendment of § 5856(d), we question whether the Legislature ever intended § 5856(d) to preclude tolling of the statute of limitations in the presence of defects in an NOI. The timing of the amendment, the language chosen, and the legislative history support the conclusion that the change was intended to be a clarification of the original intent of the statute rather than it being representative of a change from the original intent. Accordingly, we question whether Roberts I and Boodt were correctly decided, as they failed to consider the entire legislative scheme and the legislative history involved. However, *176 because the NOI and filing in this case occurred after 2004, this issue is not before us, and we will refrain from deciding this issue in the present case.

 See Roberts v Mecosta Co Gen Hosp (After Remand), 470 Mich 679, 691; 684 NW2d 711 (2004) (Roberts II) (“[W]e acknowledge that the notice of intent is provided at the earliest stage of a medical malpractice proceeding.”) (emphasis added); Boodt, 481 Mich at 561.

 MCL 600.2912b(l).

 We note that the majority in Boodt engaged in some limited discussion of § 2301 in a footnote. Boodt, supra at 567 n 4. However, as we previously indicated, the Boodt majority did not reach this issue in fight of its holding that, because the NOI was deficient, no action was pending, and § 2301 only applies to pending actions. Again, as this analysis is based on the former § 5856(d), it is no longer applicable.

 Boodt, 481 Mich at 567-572 (CAVANAGH, J., dissenting); see also Tudryck v Mutch, 320 Mich 99, 107; 30 NW2d 518 (1948) (applying the predecessor statute of MCL 600.2301 to allow amendment of a settlement agreement); Fildew v Stockard, 256 Mich 494, 498-499; 239 NW 868 (1932) (applying the predecessor statute of MCL 600.2301 to allow amendment of an affidavit for a writ of garnishment that was required to be filed before commencement of that action); Hopkins & Son v Green, 93 Mich 394, 395-396; 53 NW 537 (1892) (applying the predecessor statute of MCL 600.2301 to allow amendment of a bond); Bole v Sands & Maxwell Lumber Co, 77 Mich 239, 241-242; 43 NW 873 (1889) (holding that a summons could be amended pursuant to the “process, pleading or proceeding” language of the predecessor statute of MCL 600.2301).

 MCL 600.2301.

 MCL 600.2912b(5) provides for the exchange of medical records.

 The court found no defects with regard to the claims against the individually named doctors, the vicarious liability claims against West Michigan Cardiovascular Surgeons, and the vicarious liability claims against Spectrum Health for Heiser and Shabahang.

 Bush, 278 Mich App at 711, 716-717 (citations omitted).

 See defendant’s response to plaintiffs NOI, at pp. 182-183 of this opinion, which provides an example of a failure to demonstrate a good-faith attempt to comply with the content requirements.

 MCL 600.2301 provides that any amendment shall be made “on such terms as are just.” We note that in light of this provision, justice would be served by having any amendment relate back to the time that the original NOI was mailed, in accord with the treatment afforded to pleadings when amended under MCR 2.118(D).

 See part III(B) of this opinion for the full text.

 MCL 600.2912b(8) provides: “If the claimant does not receive the written response required under subsection (7) within the required *182 154-day time period, the claimant may commence an action alleging medical malpractice upon the expiration of the 154-day period.”
We note that our holding today does not conflict with Omelenchuk v City of Warren, 461 Mich 567, 575; 609 NW2d 177 (2000) (holding that the statute of limitations remains tolled for the full 182 days even if the plaintiff takes advantage of the shortened waiting period).

 See MCL 600.2912b(9).