*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RYAN S. NIXON and NIXON FARMS, LLC,

      Plaintiffs-Appellees,

v

WEBSTER TOWNSHIP,

      Defendant-Appellant,

and

FRANK KOLAKOWSKI and SHERRY KOLAKOWSKI,

      Intervenors-Appellants.

UNPUBLISHED
January 21, 2020

No. 343505
Washtenaw Circuit Court
LC No. 17-000084-CZ

Before: CAMERON, P.J., AND SHAPIRO AND SWARTZLE, JJ.

PER CURIAM.

Defendant, Webster Township ("Township"), and Intervenors, Frank and Sherry Kolakowski (collectively, "the Township parties") appeal the trial court's order, ruling in favor of plaintiffs Ryan S. Nixon and Nixon Farms, LLC ("plaintiffs"). The trial court reversed the decision of the Webster Township Zoning Board of Appeals ("ZBA") and concluded that the ZBA erroneously determined that wedding barns were not included within the definition of "seasonal agri-tourism" under the Township's Agriculture Zoning District's ("Agriculture District") permitted land uses. We reverse.

In June 2011, the Township adopted the Webster Township Zoning Ordinance ("Ordinance"), effective July 8, 2011. The Ordinance created several zoning districts, including the Agriculture District. The intent of the Agriculture District was to enable productive farming, to encourage the continuation of contiguous blocks of active farms, to preserve the rural character of the Township, and to allow very low density housing that is compatible with the Township's agricultural heritage. Webster Ordinance, § 9.10(A). The Ordinance included as a permitted use within the Agriculture District: "Seasonal agri-tourism, including but not limited to

-1-

hay rides, pumpkin patches, corn mazes, and Christmas tree farms." Webster Ordinance, § 9.10(B)(*ix*).

Plaintiffs operated 330 acres of farmland in the Agriculture District and grew corn, soybeans, pumpkins, and hay. In 2012, Nixon began to rent a barn on his property for weddings. According to Nixon, he requested and was given permission from the Township zoning administrator to do so because that use was considered "seasonal."

In July 2016, the Township sent Nixon a letter to inform him "that the Michigan Court of Appeals has confirmed the ruling of the Washtenaw County Circuit Court that the operation of event barns is not allowed within the Agricultural Zoning District in Webster Township."[1] The Township stated that it would delay enforcement of the ruling until October 31, 2016, but that any weddings, receptions, or similar events held at Nixon Farms thereafter would be considered a violation of the Zoning Ordinance.

Plaintiffs then requested that the ZBA define the term "agri-tourism" as provided in Webster Ordinance, § 9.10(B)(*ix*), effective July 8, 2011, to include holding barn weddings and receptions within the agricultural zoning district. The Township asked the ZBA to reject plaintiffs' interpretation and argued that in order for the land use to qualify as "seasonal agri-tourism," barn wedding ceremonies and receptions would have to fit within one of the examples of "seasonal agri-tourism" listed in the Ordinance.

The ZBA held two public hearings regarding the requests for interpretation of the Ordinance. Some of the community members who addressed the ZBA were in favor of interpreting "agri-tourism" to include wedding barns. However, a greater number of community members disagreed, expressing concerns regarding the noise, traffic, light pollution, waste, and safety issues related to wedding barns, as well as the potential disruptions to the rural character of the Agriculture District and the Township. The ZBA concluded that wedding barns were not included within the definition of agri-tourism because they did not conform to the examples provided in the Ordinance. Additionally, the ZBA concluded that "event barns" had previously been rejected by the Township as a special use within the Agriculture District.

Plaintiffs appealed the ZBA's decision to the trial court. The trial court determined that there was doubt regarding the legislative intent of the Ordinance and therefore, the language of the Ordinance must be construed in plaintiffs' favor as the property owner. The trial court reversed the ZBA's decision and concluded that wedding barns were included in the definition of "seasonal agri-tourism" under the Ordinance. This appeal followed.

---

[1] The Township referred to *Webster Twp v Waitz*, unpublished per curiam opinion of the Court of Appeals, issued June 7, 2016 (Docket No. 325008), in which a panel of this Court affirmed a trial court order that prohibited the defendants from operating a commercial event barn. Notably, the panel did not address whether the barn constituted "seasonal agritourism." See *id.* at 6 n 1. ("While the [defendants] contend that holding weddings in a barn can constitute agritourism, even if this was the case, there is no question that the barn operated year-round rather than seasonally.").

The Township and amici curiae in support of the Township argue on appeal that the trial court improperly applied rules of statutory and ordinance construction and exceeded its reviewing authority when it reversed the ZBA's factual findings and conclusions of law. We agree.

We review de novo the underlying interpretation and application of an ordinance. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008). The Michigan Zoning Enabling Act, MCL 125.3101 *et seq.*, provides the standard used to review the decision of a local zoning board of appeals. It provides, in relevant part:

> (1) Any party aggrieved by a decision of the zoning board of appeals may appeal to the circuit court for the county in which the property is located. The circuit court shall review the record and decision to ensure that the decision meets all of the following requirements:
>
> (a) Complies with the constitution and laws of the state.
>
> (b) Is based upon proper procedure.
>
> (c) Is supported by competent, material, and substantial evidence on the record.
>
> (d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals. [MCL 125.3606.]

In other words, "[t]he decision of a zoning board of appeals should be affirmed unless it is contrary to law, based on improper procedure, not supported by competent, material, and substantial evidence on the record, or an abuse of discretion." *Janssen v Holland Charter Twp Zoning Bd of Appeals*, 252 Mich App 197, 201; 651 NW2d 464 (2002).

A trial court "may affirm, reverse, or modify the decision of the zoning board of appeals" or "make other orders as justice requires." MCL 125.3606(4). Generally, a reviewing court gives deference to a municipality's interpretation of its ordinance. *Macenas v Michiana*, 433 Mich 380, 398; 446 NW2d 102 (1989). "[I]n cases of ambiguity in a municipal zoning ordinance, where a construction has been applied over an extended period by the officer or agency charged with its administration, that construction should be accorded great weight in determining the meaning of the ordinance." *Id*. However, if the language of an ordinance is unambiguous, "the ordinance must be enforced as written." *Kalinoff v Columbus Twp*, 214 Mich App 7, 10; 542 NW2d 276 (1995).

The purpose of interpreting a statute or an ordinance is "to discern and give effect to the intent of the legislative body." *Great Lakes*, 281 Mich App at 407-408. We presume that the legislative body intended the meaning it plainly expressed in the statute or ordinance. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). Clear statutory language must be enforced as written. *Velez v Tuma*, 492 Mich 1, 16-17; 821 NW2d 432 (2012). If the plain and ordinary meaning of the language is clear, "judicial construction is neither necessary nor permitted." *Pace v Edel-Harrelson*, 499 Mich 1, 7; 878 NW2d 784 (2016). A statutory provision is ambiguous only if it irreconcilably conflicts with another provision or it is equally

susceptible to more than one meaning. See *Mayor of Lansing v Public Serv Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004) (quotation marks and citation omitted).

Terms are given their plain and ordinary meanings. *Great Lakes*, 281 Mich App at 408. "When a term or phrase is not defined in a statute, the court may consult a dictionary to ascertain its commonly accepted meaning." *Motycka v Gen Motors Corp*, 257 Mich App 578, 581-582; 669 NW2d 292 (2003). Unless it is clear that something different was intended, words and phrases should be read in their grammatical context, and in the context of the entire legislative scheme. See *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). "The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme." See *id*.

The doctrine of *ejusdem generis* is

> a rule whereby in a statute in which general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated. *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241 (2000) (quotation marks and citation omitted).

However, the doctrine also applies "[w]hen a statute uses a general term followed by specific examples included within the general term." *Huggett v Dep't of Natural Resources*, 464 Mich 711, 718; 629 NW2d 915 (2001); *Belanger v Warren Consol Sch Dist, Bd of Ed*, 432 Mich 575, 583; 443 NW2d 372 (1989).[2] The doctrine "accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words." *Belanger*, 432 Mich at 583 (quotation marks and citation omitted).

In this case, when defining the term "agri-tourism," the ZBA concluded as follows:

> The Ordinance does not contain a definition for agritourism, as such, the ZBA exercises its discretion to utilize other dictionaries and other tools to assist its interpretation. Merriam-Webster defines agritourism as "the practice of touring agricultural areas to see farms and often participate in farm activities."

---

[2] To the extent that this Court in *Brown v Farm Bureau Gen Ins Co of Mich*, 273 Mich App 658, 664; 730 NW2d 518 (2007), stated that the doctrine of *ejusdem generis* does not apply when the general term precedes the more specific terms, this statement of the law was contrary to *Huggett*, 464 Mich at 718, and *Belanger*, 432 Mich at 583. This Court is bound to follow decisions of the Michigan Supreme Court when decisions of this Court conflict with Supreme Court decisions. See *Kennedy v Robert Lee Auto Sales*, 313 Mich App 277, 298 n 14; 882 NW2d 563 (2015).

Further, the State of Michigan Agricultural Tourism Advisory Commission defined "agricultural tourism" as "the practice of visiting an agribusiness, horticultural, or agricultural operation, including, but not limited to, a farm, orchard, or winery or a companion animal or livestock show, for the purpose of recreation, education, or active involvement in the operation, other than as a contractor or employee of operation."

The ZBA then interpreted the term "seasonal" as it relates to agri-tourism as follows:

> When interpreting the language of a statute or ordinance, a word or phase is given meaning by its context or setting. Section 9.10(B)(ix) provides a number of sample (seasonal) agritourism activities. These activities include, but are not limited to, "hay rides, pumpkin patches, corn mazes, and Christmas tree farms." These uses show that *seasonal* agritourism in Webster Township is related to an agricultural product, connected with an agricultural or harvest season, open to the public, has dispersed traffic patterns consisting largely of passenger vehicles, mainly occurs during daytime hours, utilizes a rural setting, and has sounds and noise traditionally associated with agricultural activities.

> * * *

> [T]he modifier "seasonal" in the listed permitted use of "Seasonal agritourism" of [the Ordinance] compels a more restrictive interpretation of the term "agritourism" in this community.

We conclude that the ZBA complied with the rules of interpretation outlined above when it interpreted Webster Ordinance, § 9.10(B)(*ix*) to exclude wedding barns from the permitted uses under "seasonal agri-tourism."[3] Specifically, the text of the Ordinance provides that "seasonal agri-tourism" "includ[es] but [is] not limited to hay rides, pumpkin patches, corn mazes, and Christmas tree farms." The term "includes" can be one of enlargement or of limitation, depending on the context. See *Frame v Nehls*, 452 Mich 171, 178-179; 550 NW2d 739 (1996). In this case, it is clear that "including, but not limited to" is a phrase of enlargement, rather than limitation, to describe nonexclusive examples of "seasonal agri-tourism." See *Bedford Pub Schs v Bedford Edu Ass'n MEA/NEA*, 305 Mich App 558, 567; 853 NW2d 452 (2014).

However, the examples of agri-tourism listed in the Ordinance relate to recreational or amusement activities on a farm that occur during the autumn and winter seasons and during the holidays. As reasoned by the ZBA, these activities share the common characteristics of being associated with an agricultural or harvest season. The activities are also open to the public and

---

[3] Although plaintiffs urge this Court to interpret "seasonal agri-tourism" more expansively, interpreting the Ordinance is within the province of the ZBA so long as it did not err. Because the ZBA did not do so, we decline to assign our own definition to the term "seasonal agri-tourism."

involve members of the public coming and going during the hours that the activities are available. The examples identified in the Ordinance involve products that are grown on a farm, namely hay, pumpkins, corn, and Christmas trees. The examples of seasonal agri-tourism listed in the Ordinance also involve visiting farms and participating in farm activities, i.e., "harvesting" pumpkins or cutting down Christmas trees. See *Huggett*, 464 Mich at 719 (holding that the statute exempted "farming activities" and that the examples of "farming activities" demonstrated that the activities were related to the operation of a farm or the practice of farming).

In contrast, wedding ceremonies and receptions are private events that are not associated with a particular agricultural product or harvest season. As reasoned by the ZBA, agricultural products are not necessary or utilized during a wedding ceremony or reception. Although plaintiffs argue that there is a "wedding season" generally from May to September, weddings are unrelated to an agricultural or harvest season that takes place on a farm as contemplated by the Ordinance. Weddings have concentrated traffic patterns at the beginning and end of the event and may also include significant commercial traffic for vendors. Wedding receptions often stretch late into the night. The ZBA further reasoned that the sounds of hundreds of wedding attendees and amplified music for dancing and celebrating are not traditional agricultural sounds or noise associated with agricultural activities.

Additionally, the context and legislative scheme of the Ordinance supports the conclusion that the Township intended to exclude wedding barns from the permitted use of "seasonal agri-tourism." The Township Master Plan, as amended in 2015, provides that agriculture was historically a major economic activity in the Township, and Township residents supported farmland preservation and preservation of natural features. The Township established the planning goals of preserving the rural character of the Township, strengthening the rural identity of the Township, and maintaining large areas of active agricultural land. Regarding agriculture area policies, the Master Plan provided that Township residents emphasized the importance of farming and agricultural preservation. The Master Plan provided that "[i]ntense commercial operations such as event barns are not compatible within the Agriculture district." Therefore, wedding barns were expressly contrary to the purposes of the Agriculture District under which "seasonal agri-tourism" was a permitted use. Further, the purposes of the Agriculture District support the conclusion that "seasonal agri-tourism" did not include wedding barns. The intent of the Agriculture District was to "enable productive farming, encourage the continuation of contiguous blocks of active farms, preserve the rural character of the Township, and allow very low density housing that is compatible with the Township's agricultural heritage."

The ZBA considered the Ordinance scheme, the purpose of the Agriculture District, and the rural character of the Township and rejected plaintiffs' proffered definitions of "agri-tourism" from other sources and jurisdictions as specific to those communities. Additionally, it concluded that plaintiffs' proffered definitions of "agri-tourism" were contrary to the plain language and legislative scheme of the Ordinance. More specifically, as already discussed, the ZBA found that weddings have concentrated traffic patterns at the beginning and end of the event and that sounds associated with wedding receptions are not traditional agricultural sounds that can be associated with agricultural activities. Therefore, the ZBA's determination that weddings do not promote the rural character of the Agriculture District and the Township was supported by its findings.

Regarding the Township's prior legislative activity, the ZBA considered that the Township previously decided that wedding barns were a commercial activity and were therefore not appropriate as a "special use" within the Agriculture District. Although this legislative activity occurred in 2012 and 2013, i.e., after the Township adopted the Ordinance, the ZBA considered the Township's actions regarding the Ordinance and whether wedding barns should be permitted in the Agriculture District when interpreting the meaning of "seasonal agri-tourism" at the time plaintiffs requested that the ZBA interpret the Ordinance. The ZBA properly considered the legislative history to further support its interpretation, but it did not allow it to supersede its analysis of the plain language of the Ordinance and the scheme and context of the Ordinance. See *Mason Co v Dep't of Community Health*, 293 Mich App 462, 473-479; 820 NW2d 192 (2011) (explaining that a court may consider predecessor statutes and the law's historical development, as well as the law's historical context); but see *Universal Underwriters Ins Group v Auto Club Ins Ass'n*, 256 Mich App 541, 546; 666 NW2d 294 (2003) ("[W]e note that legislative analyses are unpersuasive tools of statutory construction.").

Because the ZBA's decision was supported by the plain language of the Ordinance and the context of the provision regarding "seasonal agri-tourism" in the legislative scheme of the Ordinance, the principle of interpretation discussed in *Talcott v Midland*, 150 Mich App 143; 387 NW2d 845 (1985), was not applicable.[4] The *Talcott* Court stated that "[w]hen interpreting the language of an ordinance to determine the extent of a restriction upon the use of property, the language must be interpreted, where doubt exists regarding legislative intent, in favor of the property owner." *Talcott*, 150 Mich App at 147. However, *Talcott* did not establish a rule requiring that an ordinance be construed in favor of a property owner when a term in the ordinance is *unambiguous* and the Legislative intent is clear. In this case, the ZBA properly based its determination that wedding barns were not included in the definition of "seasonal agri-tourism" on the plain language and the scheme of the Ordinance. Therefore, the principle of interpretation in *Talcott* is not applicable in this case. See *Talcott*, 150 Mich App at 147.

We conclude that the ZBA's decision to exclude wedding barns from the term "seasonal agri-tourism" was authorized by law and supported by competent, material, and substantial evidence on the whole record and was a reasonable exercise of its discretion. See MCL 125.3606; *Olsen v Chikaming Twp*, 325 Mich App 170, 179-180; 924 NW2d 889 (2018). We conclude that the trial court should have afforded deference to the ZBA's expertise. See *Macenas*, 433 Mich at 398. We further conclude that the trial court erred by failing to apply the correct legal principles, by misapplying the substantial-evidence test to the ZBA's findings of

---

[4] Additionally, we acknowledge that Court of Appeals cases decided before November 1, 1990, are not binding. MCR 7.215(J)(1). Although this Court is not " 'strictly required to follow uncontradicted opinions from this Court decided prior to November 1, 1990,' those opinions are nonetheless 'considered to be precedent and entitled to significantly greater deference than are unpublished cases.' " *People v Bensch*, 328 Mich App 1, 7 n 6; 935 NW2d 382 (2019), quoting *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted).

fact and conclusions of law, and by reversing the ZBA's determination that "seasonal agri-tourism" did not include wedding

barns. See MCL 125.3606(4); *Olsen*, 325 Mich App at 179-180.[5]

Reversed. The findings and decision of the ZBA are reinstated.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle

---

[5] Notwithstanding our decision in this case, we acknowledge that in August 2018, the Township further defined the term "seasonal agri-tourism" to expressly excluded event and wedding barns.