# STATE OF MICHIGAN

# COURT OF APPEALS

---

DUSTIN ROCK,

        Plaintiff-Appellant/Cross-Appellee,

v

DR. K. THOMAS CROCKER and DR. K.
THOMAS CROCKER, D.O., P.C.,

        Defendants-Appellees/Cross-
        Appellants.

FOR PUBLICATION
November 18, 2014
9:20 a.m.

No. 312885
Kent Circuit Court
LC No. 10-006304-NM

---

Before: SHAPIRO, P.J., and WHITBECK and STEPHENS, JJ.

SHAPIRO, P.J.

Defendant, Dr. K. Thomas Crocker,[1] performed orthopedic surgery on plaintiff's ankle on September 28, 2008 and for some time thereafter provided plaintiff with post-surgical care. Plaintiff later filed the instant medical malpractice action, alleging that he suffered injury resulting from violations of the standard of care by defendant during surgery and during post-surgical care. Shortly before the scheduled trial date, the trial court ruled on several motions in limine. We granted plaintiff's interlocutory application for leave to appeal from one of these pretrial rulings.[2] Defendant then cross-appealed from the trial court's rulings on two other motions in limine.

Plaintiff appeals from the trial court's ruling that one of plaintiff's proffered expert witnesses may not testify as to the standard of care applicable to the treatment provided by defendant to plaintiff. Defendant cross-appeals from two other rulings: the trial court's grant of plaintiff's motion to preclude any reference to plaintiff's receipt of no-fault insurance benefits and the trial court's denial of defendant's motion to "strike allegations of malpractice." In plaintiff's appeal, we reverse based on the text of the controlling statute. In defendant's cross-

---

[1] Although his professional corporation is also a defendant in this action, in the interests of clarity, this opinion will refer to Dr. Crocker and his corporation as "defendant."

[2] *Rock v Crocker*, unpublished order of the Court of Appeals, entered September 12, 2013 (Docket No. 312885).

appeal, we affirm the trial court's ruling as to plaintiff's no-fault benefits, but reverse in part the trial court's denial of defendant's request to strike allegations.

## I. PLAINTIFF'S APPEAL

In a medical malpractice case, a plaintiff must establish that the medical care provided by the defendant fell below the standard of medical care applicable at the time the care was provided. This is set forth in MCL 600.2912a(1):

> [I]n an action alleging [medical] malpractice, the plaintiff has the burden of proving that in light of the state of the art *existing at the time of the alleged malpractice . . . .* [Emphasis added.]

By way of example, if a doctor is sued for malpractice alleged to have occurred on September 1, 2010, the question of whether he was professionally negligent turns on whether he complied with the standard of care as it existed on September 1, 2010. Medicine is a constantly evolving science, but a physician's conduct and decision-making must be judged against the standard of care that applied when he acted, not against some standard that developed thereafter. Put simply, changes in the standard of care do not apply retroactively in medical malpractice suits.

Consistent with this principle, a physician who testifies to the standard of care at issue must have possessed, on the date of the alleged malpractice, the same relevant specialty qualifications as the defendant. This is set forth in MCL 600.2169(1)(a), which provides:

> In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

The trial court concluded that one of plaintiff's expert witnesses, Dr. Viviano,[3] cannot satisfy MCL 600.2169(1)(a) and so may not testify as to the standard of care. This was error. Because Viviano and defendant were both board-certified orthopedic specialists at the time of the alleged malpractice (i.e., "at the time of the occurrence that is the basis for the action"), Viviano meets the requirements of the statute and so may testify as to standard of care issues.

---

[3] Dr. Viviano was plaintiff's treating physician after plaintiff discontinued treatment with defendant.

At the time of the alleged malpractice, defendant was a board-certified specialist in orthopedic surgery. And, at the time of the alleged malpractice, Viviano was also a board-certified specialist in orthopedic surgery. Both defendant and Viviano have continued to practice as orthopedic specialists. However, since the time of the alleged malpractice, Viviano's board certification lapsed and he has not renewed it.[4] Defendant argued, and the trial court agreed, that under MCL 600.2169(1)(a), Viviano could not offer expert standard-of-care testimony at trial because although he was a board-certified specialist at the time of the alleged malpractice, it was likely that he would not be board certified at the time of trial.

This case involves the interpretation of a statute, which presents a question of law subject to review de novo. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). As our Supreme Court has instructed,

> the purpose of statutory construction is to discern and give effect to the intent of the Legislature. In determining the intent of the Legislature, the Court must first look to the language of the statute. The Court must, first and foremost, interpret the language of a statute in a manner that is consistent with the intent of the Legislature. As far as possible, effect should be given to every phrase, clause, and word in the statute. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. Moreover, when considering the correct interpretation, the statute must be read as a whole. Individual words and phrases, while important, should be read in the context of the entire legislative scheme. [*Bush v Shabahang*, 484 Mich 156, 166-167; 772 NW2d 272 (2009) (quotation marks and footnotes omitted).]

The statute refers to two different individuals: the defendant and the expert.[5] It also refers to two different but interrelated qualifications: medical specialty[6] and board certification.[7] If the defendant is a specialist, the testifying expert must have been a specialist in the same specialty at the time of the occurrence that is the basis for the action. If the defendant is board

---

[4] It appears that Viviano's board certification lapsed due to the arrival of its expiration date and that he did not seek recertification. There is no evidence that his board certification was revoked or that he was denied recertification and we do not address such alternative factual scenarios.

[5] The statute also concerns an expert offering testimony on behalf of a health professional. That is not the factual situation present in this case but our analysis would apply to such a situation.

[6] "[A] 'specialty' is a particular brand of medicine or surgery in which one can potentially become board certified." *Woodard*, 476 Mich at 561-562. To be a testifying "specialist," the statute "requires a proposed expert [witness] physician to spend greater than 50 percent of his or her professional time practicing the relevant specialty the year before the alleged malpractice." *Kiefer v Markley*, 283 Mich App 555, 559; 769 NW2d 271 (2009).

[7] "[T]o be 'board certified' within the meaning of § 2169(1)(a) means to have received certification from an official group of persons who direct or supervise the practice of medicine that provides evidence of one's medical qualifications." *Woodard*, 476 Mich at 565.

certified in a specialty, then the testifying expert must have been board certified in the same specialty. We are tasked with determining *when* the testifying expert must have been board certified. Contrary to defendant's argument, which was adopted by the trial court, we conclude that an expert, testifying against a board-certified defendant, must have been board certified in the same specialty at the time of the occurrence that is the basis for the action.

Defendant's primary argument is that the second sentence of MCL 600.2169(1)(a) employs the present tense and, therefore, must refer to the time the testimony is delivered. However, this argument is belied by the first sentence of MCL 600.2169(1)(a), which employs the same present-tense verbs yet plainly refers to a past time period, i.e., the time of the occurrence that is the basis for the action. That is, the first sentence provides that, "If a party against whom or on whose behalf the testimony *is* offered *is* a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony *is* offered." (Emphasis added). Thus, despite employing the word "is," i.e., the present tense form of the verb "to be," the first sentence still requires that the time at which the expert witness must so specialize is at a time in the past in relation to trial, i.e., at the time of the occurrence that is the basis for the action. The second sentence employs nearly identical present tense verbs: "if the party against whom or on whose behalf the testimony *is* offered *is* a specialist who *is* board certified, the expert witness must *be* a specialist who *is* board certified in the specialty." (Emphasis added). Accordingly, defendant's argument that the present-tense verbs employed by the second sentence of the statute require that they be read to apply to the "present," i.e., the time of the testimony, is belied by the sentence directly before it and ignores our mandate to read the statute as a whole. *Bush*, 484 Mich at 166-167.

Defendant's present-tense argument is also defeated by reading the statute in its grammatical context. Removing the clauses related to the defendant, and considering only those relevant to the testifying expert, the statute reads:

> In an action alleging malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) . . . specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. . . . [or] the expert witness must be a specialist who is board certified in that specialty.

This reading more clearly demonstrates that the plain language of the second sentence of MCL 600.2169(1)(a) is an extension of the first. If the defendant is a board-certified specialist, the statute requires that a testifying expert must "specialize[] at the time of the occurrence that is the basis for the action in the same specialty . . . [and be] board certified in that specialty." This statute, indeed the relevant subsection itself, provides that the time period required for an expert to be similarly qualified as the defendant is the time of the occurrence that is the basis for the action. There is no indication, explicit or implied, that the Legislature intended that a wholly different time period, i.e., the time the testimony is delivered, is to apply where a defendant is a board-certified specialist, as opposed to merely a specialist.

As our Supreme Court has stated, the second sentence of MCL 600.2169(1)(a) provides an "additional" requirement. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004). That requirement provides that an expert testifying against a board-certified defendant must himself be board certified in that same specialty. By imposing an "additional" requirement on the first sentence, the second sentence adds to rather than contradicts the first. Defendant offers no basis to conclude that the Legislature intended that a "specialist" must specialize at the time of the occurrence that is the basis for the action, but that a "board-certified specialist" must be board certified at a completely different time, i.e., the time his testimony is delivered. In the absence of a specific and different time period referenced by the Legislature, we must conclude that the time period for board-certified specialists pursuant to MCL 600.2169(1)(a) is the time of the occurrence that is the basis for the action. See *King v Reed*, 278 Mich App 504, 515; 751 NW2d 525 (2008) ("This Court will not read anything into a statute that is not within the manifest intent of the Legislature, as gleaned from the language of the statute itself.").

Our interpretation is also consistent with the Legislature's most recent amendment of the statute. "[C]ourts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or to clarify the correct interpretation of the original statute." *Bush*, 484 Mich at 167. Before it was amended in 1993, 1993 PA 78, to its current iteration, the statute provided:

> (1) In an action alleging medical malpractice, if the defendant is a specialist, a person shall not give expert testimony on the appropriate standard of care unless the person *is or was* a physician licensed to practice medicine or osteopathic medicine and surgery or a dentist licensed to practice dentistry in this or another state and . . . :
>
> (a) *Specializes, or specialized at the time of the occurrence* which is the basis for the action, in the same specialty or a related, relevant area of medicine or osteopathic medicine and surgery or dentistry as the specialist who is the defendant in the medical malpractice action.
>
> [Emphasis added.]

With the removal of these two phrases, the Legislature made clear that it intended to remove an "either/or" determination from the statute. That is, under the previous version of the statute, an expert witness was qualified to testify against a specialist defendant if the expert specialized at the time of trial and/or at the time of the occurrence. Under the amended statute, the relevant qualifications must be tested at the time of the occurrence that is the basis for the action only.

Like the plain language of the statute, caselaw also requires that if the defendant was a board-certified specialist at the time of the occurrence that is the basis for the action, any expert testifying as to the applicable standard of care must have been a board-certified specialist at that same time. In *Woodard*, 476 Mich at 560, our Supreme Court explained the statute as follows:

> [T]he plaintiff's expert witness must match the one most relevant standard of practice or care—the specialty engaged in by the defendant physician during the course of the alleged malpractice, and, if the defendant physician is board

-5-

certified in that specialty, the plaintiff's expert must also be board certified in that specialty.

The Supreme Court, consistent with the language of the statute, did not specify that an expert testifying against a board-certified defendant must have been board certified at any other time than the time of the occurrence that is the basis of the action. *Woodard* also provides that

> if a defendant physician has *received* [board] certification from a medical organization . . ., the plaintiff's expert witness must also have *obtained* the same certification in order to be qualified to testify concerning the appropriate standard of medical practice or care. [*Woodard*, 476 Mich at 565. (Emphasis added).]

It is undisputed that Viviano *obtained* (past tense) the relevant board certification; that he no longer possesses the certification does not alter the fact that it had been obtained and was in effect at the time of the occurrence that is the basis for the action. Moreover, *Woodard* specified that if a defendant physician has *received* (again, using the past tense) board certification, the testifying expert must have obtained the same certification. Accordingly, *Woodard* is consistent with our interpretation of the MCL 600.2169(1)(a).

We reject defendant's argument that a different result is dictated by a passage from *Halloran*, 470 Mich at 578-579, wherein the Supreme Court interpreted MCL 600.2919(1)(a) as follows:

> [Our] interpretation is supported by the use of the word "however" to begin the second sentence. Undefined statutory terms must be given their plain and ordinary meanings, and it is proper to consult a dictionary for definitions. *Donajkowski v Alpena Power Co*, 460 Mich 243, 248-249; 596 NW2d 574 (1999); *Koontz v America Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). *Random House Webster's College Dictionary* (2d ed) defines "however" as "in spite of that" and "on the other hand." Applying this definition to the statutory language compels the conclusion that the second sentence imposes an *additional* requirement for expert witness testimony, not an optional one. In other words, "in spite of" the specialty requirement in the first sentence, the witness must also share the same board certification as the party against whom or on whose behalf the testimony is offered.

Defendant cites this passage for the proposition that the second sentence of MCL 600.2169(1)(a) constitutes essentially a separate and independent evidentiary requirement which must be read separately from the rest of the statute. This argument is not only contrary to the canons of statutory interpretation, *Bush*, 484 Mich at 166-167, but also mischaracterizes the Supreme Court's statement. As a preliminary matter, the instant case concerns different operative facts than did *Halloran*; that is, we do not consider the two sentences of MCL 600.2169(1)(a) as applied to this case, other than to interpret the second sentence with reference to the first. Substantively, we do not reject *Halloran*'s mandate that the second sentence imposes a requirement that must be applied to board certified standard-of-care expert witnesses in medical malpractice cases. *Halloran* mandates that "the witness must [] share the same board certification as the party against whom or on whose behalf the testimony is offered." *Halloran*,

470 Mich at 579. We merely address at what time period the witness must share that board certification, a question not addressed in *Halloran*, therefore rendering that opinion inapplicable in this case.

Defendant's suggested interpretation would also have additional confounding consequences where the defendant physician was board certified at the time of the occurrence but had retired, died, or allowed his certification to lapse prior to trial. In such cases, testing board certification at the time of trial, rather than the occurrence, would permit testimony from an expert who had *never* been board certified. Even if a defendant retained his board certification throughout the litigation, defendant's interpretation would allow for standard of care testimony by a specialist who was not board certified at the time of the occurrence but became board certified during the pendency of the litigation.

In accordance with the plain language of the statute, its most recent amendment, the relevant caselaw, and common sense, we hold that, under MCL 600.2169(1)(a), an expert witness seeking to offer standard-of-care testimony against or on behalf of a board-certified specialist must himself have been board certified in the same specialty at the time of the occurrence that is the basis for the action. Thus, in this case, the trial court erred by granting defendant's motion in limine to exclude Viviano's standard-of-care testimony.

## II. DEFENDANT'S CROSS-APPEAL

## A. MOTION TO STRIKE ALLEGATIONS

Plaintiff's complaint alleges that defendant committed medical malpractice in treating a trimalleolar facture of plaintiff's right ankle. The complaint alleges 10 specific instances of professional negligence on the part of defendant. The two specific alleged breaches of the applicable standard of care relevant to defendant's cross-appeal are plaintiff's claims that: (1) defendant improperly employed screws and a plate in the surgery he performed on plaintiff's ankle and (2) defendant improperly told plaintiff that he could bear weight on his ankle. One of plaintiff's expert witnesses, Dr. Goral, was deposed regarding defendant's treatment of plaintiff. Goral testified that defendant's placement of the plate, and the number of screws employed, violated the applicable standard of care. However, Goral did not dispute defendant's counsel's assertion that, based on the evidence available, this specific alleged breach of the standard of care did not cause damage to plaintiff. Goral also testified that defendant's post-surgery advice to plaintiff that he could bear weight on his ankle violated the applicable standard of care. However, he similarly testified that this alleged improper advice, on the evidence available, did not cause damage to plaintiff.

Defendant filed a motion in limine to "strike allegations of malpractice" and to preclude plaintiff from offering any evidence regarding these two alleged breaches of the standard of care at trial. Defendant argued that, based on Goral's testimony, plaintiff could not establish a causal link between these two alleged breaches and plaintiff's claimed injuries and damages and that, therefore, any reference to the acts must be excluded. In response, plaintiff acknowledged that Goral's statements, on their own, were insufficient to establish that the two alleged breaches caused plaintiff injury. However, plaintiff asserted that evidence of the two alleged breaches was nonetheless relevant to his argument that, "notwithstanding [defendant's] claim that he has

performed a hundred of [sic] ankle fracture repairs, [he] does not have the requisite skill or ability to properly fixate a trimalleolar fracture" and that the evidence "still goes to his overall knowledge and skill in the repair of these type of fractures."

The trial court denied defendants' motion, holding as follows:

> The Court is satisfied beyond peradventure that there is sworn testimony that the witnesses endorsed by the plaintiff will allege aspects of the treatment provided by the defendant to the plaintiff fell below the standard of care. The defense has argued that because certain aspects of the specifically identified breaches of the standard of care did not result in damages to the plaintiff that they *ipso facto* must be excluded as evidence. Defendant argues at Page 3 of their brief that the Affidavit of Merit which suggests that the defendant was professionally negligent by allowing the plaintiff to bear weight on his right leg beginning on October 6, 2008, as well as providing a fixation method using an inadequate number of screws and metal plate that was too short, while falling below the standard of care, that because these violations of the standard of care do not specifically result in injuries to the plaintiff that the evidence must be excluded and the claims must be excluded.

> The difficulty with this analysis is that it looks at the conduct which is alleged to be deficient in the treatment provided by the defendant in a complete vacuum. This is inappropriate and it does not give the jury an adequate opportunity to review in its entirety the quality of treatment provided by the defendant. It is certainly reasonable for a reasonable finder of fact to examine all the claims of the plaintiff and if satisfied that in addition to the difficulties of treatment that actually caused injuries if they believe the Defendant Doctor also breached the standard of care in a variety of multiple other ways then it provides evidence which is relevant because it makes a question of fact more likely than not, that is, that the doctor did not perform his duties as required by the standard of care and that injuries he did suffer were a result of his breaches and that the claims of the plaintiff are meritorious and should be compensated. It is also probable that the jury will reject this evidence and find it has no bearing or credibility; however, it should not be excluded.

> The Court further finds that the conduct by the defendant sought to be excluded is all part of the *res gestae* of the claims before the Court.

> As relates to the MRE 403 test, the Court does not believe that the prejudice of this information substantially outweighs its probative value. To the contrary, the prejudicial impact is *de minimis* if any and it is in the Court's assessment highly probative of whether or not that which was provided in medical care of the plaintiff in the time in questions fell below the appropriate standards.

Defendant's artfully titled "motion to strike allegations" actually presents two distinct issues. First, in what is effectively a request for partial summary disposition, defendant argues that because there is no evidence that these two particular breaches caused injury, defendant may

not seek damages for those violations. Whether a plaintiff's claim of medical malpractice fails in whole or in part as a matter of law is an issue of law that we review de novo. *King*, 278 Mich App at 520. After conducting review de novo, we agree with defendant that plaintiff may not seek damages for those violations and that the trial court, insofar as it did not so rule, was in error. See *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995).

The second issue raised in defendant's motion is his request that the trial court exclude all evidence that defendant violated the standard of care in these two respects. This aspect of the motion goes to the admission of evidence which we review for an abuse of discretion. *Albro v Drayer*, 303 Mich App 758, 760; 846 NW2d 70 (2014). We agree with the trial court that evidence of a course of defendant's violations of the standard of care, even if the violations did not directly cause plaintiff's eventual injury may be relevant to the jury's understanding of the case.[8] But, as we have ruled that plaintiff may not seek damages for those alleged violations, the trial court's view of the calculus of probative value and prejudicial impact may change. See MRE 403. Accordingly, we vacate the evidentiary ruling so that the trial court may exercise its discretion in that context and consider what limiting jury instruction to give in the event it finds the evidence admissible.

### B. EXCLUSION OF EVIDENCE OF NO-FAULT BENEFITS

Defendant also argues that the trial court abused its discretion by granting plaintiff's motion to exclude evidence of any no-fault insurance benefits plaintiff received. We disagree.

In the present case, plaintiff fractured his ankle while changing a tire on a motor vehicle; therefore, he received no-fault insurance benefits from his motor vehicle insurance carrier after the accident. Plaintiff moved to exclude from trial any evidence of his no fault benefits, including the reimbursement of his medical expenses and payment of wage loss benefits; he argued that pursuant to MCL 600.6303, the amount of any medical malpractice judgment would be reduced by the amount of these no-fault payments after trial[9] and so introduction of those payments during trial could result in a double-reduction or other prejudice.

In response, defendant argued that he wished to introduce the existence and amount of no-fault benefits paid to plaintiff as consistent with defendant's claim that plaintiff was malingering and not actually seriously injured. Evidence of insurance coverage may not be

---

[8] In addition to proving proximate causation, plaintiff must prove that defendant's treatment of him was negligent. And, as the trial court noted, whether defendant understood the proper use of the surgical plates and screws, and whether he understood when plaintiff could safely bear weight on his ankle, is relevant to his competency in treating this injury.

[9] MCL 600.6303 permits "the presentation of evidence to a trial court *after* a verdict but before judgment to show that a plaintiff's claimed expense or loss was paid or is payable, in whole or in part, by a collateral source," and requires a trial court to reduce the amount of the judgment by that amount. *Greer v Advantage Health*, 305 Mich App 192, 207-208; 852 NW 2d 198 (2014) (emphasis added).

introduced for the purpose of mitigating damages. *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 58; 457 NW2d 637 (1990). However, this rule is not an absolute bar to the admission of such evidence. An exception to the general rule of exclusion exists "where the evidence is sought to prove malingering or motivation on the plaintiff's part not to resume employment or to extend the disability." *Id*.

Certainly, defendant may assert at trial that plaintiff is a malingerer. And, defendant has significant evidence upon which to base this argument. Another physician who treated plaintiff opined that plaintiff was "a non-compliant, unmotivated patient who has exaggerated his injuries and/or pain" and that plaintiff's "current status is best explained by his lack of motivation to improve his medical condition, secondary gain, and lack of compliance with his healthcare providers." Defendant also points to evidence that doctors other than defendant had cleared plaintiff to return to work and plaintiff's deposition testimony, in which he stated that shortly before his injury he learned he was going to be fired from his job and that he remained capable of attending school.

The trial court granted plaintiff's motion, holding as follows:

The Court is satisfied that the Collateral Source Rule bars the admission of this evidence. See *Kurta v Probelske*, 324 Mich 179; 36 NW2d 889 (1949). The Court does not believe that the introduction of the existence of PIP benefits in any way leads to further clarification of the issues at bar and it will be excluded. Even if there were any modest probative value of such evidence, the Court believes that any probative value of PIP benefits would be substantially outweighed by the probative value[sic[10]] and would confuse the jury.

This conclusion, however, does not in any way restrict the defendants from being able to call witnesses or treating physicians to provide testimony that they believe that Plaintiff is malingering, motivated by financial compensation or any other rationale that they believe exists to demonstrate why that which the plaintiff represents is not correct.

The defense is excluded from introducing evidence of no-fault benefits. They are not excluded from introducing evidence of medical providers that tend to suggest that the plaintiff is fabricating or exaggerating the injuries for ulterior motives.

Where there is evidence other than insurance coverage to suggest malingering, admission of evidence of insurance coverage is left to the discretion of the trial court. *Nassar*, 435 Mich at 59-60. In exercising this discretion, the trial court must undertake an MRE 403 analysis. *Id*. The court must weigh the probative value of the evidence against

---

[10] Presumably, the trial court intended the preceding phrase to read "prejudicial effect."

the danger of unfair prejudice, confusion of the issues, misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. [MRE 403.]

The trial court recognized the applicability of MRE 403 and made findings consistent with the language of the rule as to which we find no abuse of discretion. First, the evidence of plaintiff's no-fault insurance benefits is cumulative in light of the other evidence available to defendant to support his claim of malingering. Second, since plaintiff's no-fault wage loss benefits must, by statute, have terminated in 2011, their probative value is limited. See MCL 500.3107(1)(b). Moreover, presentation of evidence of plaintiff's no-fault benefits has the potential to mislead and confuse the jury such that it might conclude that it should reduce plaintiff's damages by the amount of his insurance benefits, which is a matter solely left to the trial court after verdict. See MCL 600.6303. Perhaps more important in terms of judicial efficiency, allowing introduction of this marginally probative evidence would result in a mini-trial on the question of whether plaintiff was legally and factually entitled to no-fault benefits. If the receipt of the benefits is admitted to show that plaintiff was wrongly seeking financial gain, plaintiff would be entitled to respond with proofs that his receipt of these benefits was proper. This process could include the calling of more physician witnesses, insurance company adjustors and other personnel, and the review of internal insurance company documents, among additional otherwise extraneous proofs.

In sum, the trial court did not abuse its discretion when it determined that, although there was evidence to support defendants' theory of malingering, evidence of collateral source payments, in the form of plaintiff's no-fault benefits, was not admissible because the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. MRE 403.

We reverse the trial court's ruling that Dr. Viviano may not testify as to the applicable standard of care. We reverse the trial court's denial of defendant's motion to strike allegations insofar that it denied defendant's request to bar an award of damages for the two alleged violations of the standard of care as to which plaintiff has not offered evidence of causation, and instruct the trial court on remand to reconsider defendant's request to exclude evidence of those two alleged violations of the standard of care. We affirm the trial court's grant of plaintiff's motion to exclude evidence of no-fault insurance benefits. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ William C. Whitbeck
/s/ Cynthia Diane Stephens

-11-