# STATE OF MICHIGAN

# COURT OF APPEALS

STACEY WHITE,

       Plaintiff-Appellant,

v

GERALD SCHELL, M.D., and SAGINAW
VALLEY NEUROSURGERY, PLLC,

       Defendants-Appellees,

and

ST. MARY'S HOSPITAL OF MICHIGAN,

       Defendant.

UNPUBLISHED
August 3, 2017

No. 329640
Saginaw Circuit Court
LC No. 11-013778-NH

Before: O'BRIEN, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Plaintiff Stacey White appeals as of right a judgment of no cause of action entered after a jury trial in this action for medical malpractice. We affirm.

Plaintiff filed suit against Dr. Gerald Schell, M.D., Saginaw Valley Neurosurgery, PLLC, and St. Mary's Hospital of Michigan, alleging that Dr. Schell (hereinafter defendant) diagnosed her with spondylolisthesis at the L5-S1 joint and recommended a minimally invasive surgical procedure to stabilize plaintiff's spine, but negligently failed to use the proper procedure and tools to stabilize the L5-S1 joint in a proper manner. Plaintiff alleged that as a result of defendant's negligence she was disabled, in permanent pain, and had sustained both economic and non-economic losses.

Dr. Gary Lustgarten, a neurosurgeon and plaintiff's standard of care witness, defined spondylolisthesis as the slippage of one vertebra on another vertebra. Dr. Lustgarten stated that spondylolisthesis could occur from a pars defect, or fracture, of the vertebra that disconnects the front and back parts of the vertebra. Dr. Lustgarten determined that defendant breached the standard of care by making an incorrect diagnosis of plaintiff's spondylolisthesis and then performing a surgical procedure that could not improve plaintiff's particular condition. Dr. Lustgarten opined that plaintiff experienced increased right leg pain after the surgery because

-1-

defendant did not decompress the nerve, and the surgical intervention increased the irritation of the nerve. Dr. Lustgarten stated that plaintiff had a permanent disability due to chronic pain in her back and right leg.

Steven Lackie, a certified physician assistant for defendant, acknowledged that his notes for plaintiff's first post-operative visit indicated that plaintiff was experiencing significant pain in her back and right leg, and that the pain seemed new. On cross-examination, Lackie agreed that if plaintiff had a history of right leg pain before the surgery, it was "very probable" that he erred when he noted that plaintiff's right leg pain seemed new.

Dr. Jawad Shah, a neurosurgeon and plaintiff's witness, testified that plaintiff first consulted with Dr. Shah approximately six months after defendant's surgery. Plaintiff told Dr. Shah that she had experienced back and right leg pain for approximately 10 years. Dr. Shah stated that he reviewed a new MRI and found that plaintiff still had spondylolisthesis at L5-S1 because the pars defect was still present. Dr. Shah performed surgery to insert pedicle screws to stabilize the fracture and removed the screws placed by defendant because those screws were not working to stabilize the fracture. Dr. Shah did not decompress the nerve because he concluded that the nerve root had sufficient room. Shah opined that the nerve could have been stretched, i.e., injured during surgery. Dr. Shah acknowledged that the fusion process can take as long as 24 months to complete, and that when he first saw plaintiff he was not surprised that fusion had not occurred. Dr. Shah indicated that nerve root injury was a known risk of surgery, and that such an injury could occur in spite of a surgeon making his or her best effort to avoid it.

Plaintiff testified that she began experiencing back pain in 2000 or 2001, and acknowledged that she had right-sided pain before consulting with defendant. Plaintiff stated that after she awoke from the surgery performed by defendant, she felt pain in her right leg. She described the pain as more intense than the pain she had experienced before the surgery. Plaintiff stated that her back pain improved after Dr. Shah performed surgery, but that her right leg pain did not improve.

Plaintiff stated that she was no longer able to work as a nail technician after she underwent surgery because her leg pain made her unable to sit for a prolonged period of time. She stated that she earned an average of $700 a week as a nail technician, but acknowledged on cross-examination that she had applied for Social Security disability benefits in 2009 and indicated on her application form that she earned $13,000 annually. Plaintiff acknowledged that before consulting with defendant, she saw other physicians who diagnosed a pars defect at L5-S1 with lower back pain and right-sided radiculopathy.

Defendant testified that before surgery, plaintiff reported that she was experiencing pain, numbness, and tingling in her lower back and right leg. Defendant stated that he and plaintiff discussed various risks associated with surgery, including "neurologic worsening."[1] Defendant

---

[1] Dr. Steven Rapp, defendant's standard of care witness, testified that "neurological worsening" meant that a condition that existed before surgery could worsen if a nerve was injured or stretched during a procedure.

-2-

indicated that the treatment he provided was targeted to plaintiff's right-sided pain, and noted that the success rate of the procedure he performed was between 60% and 75% for patients who have a long history of smoking, as did plaintiff. Defendant opined that he complied with the applicable standard of care, and contended that he did not cause damage to plaintiff.

Dr. Steven Rapp, a neurosurgeon, testified as defendant's standard of care witness. He reviewed relevant materials and opined that defendant complied with the standard of care when he operated on plaintiff. Dr. Rapp noted that a physician could use acceptable technique and still not get the result desired, and observed that fusion would not occur in a certain percentage of spinal surgery patients.

The jury found that defendant was professionally negligent and that plaintiff was injured, but that defendant's negligence was not a proximate cause of the injury.

Plaintiff moved for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. Plaintiff argued that the jury could not find that defendant was negligent in performing the wrong procedure, but that the negligence caused no damage. Plaintiff argued that the inconsistent verdict entitled her to JNOV or a new trial. Plaintiff also argued that she was entitled to a new trial because the trial court erred by admitting her application for social security disability benefits because the evidence violated the collateral source rule. The trial court denied plaintiff's motion for JNOV or a new trial, finding that the verdict was not inconsistent or against the great weight of the evidence. In addition, the trial court found that the admission of plaintiff's application for Social Security disability benefits was proper for purposes of impeachment.

On appeal, plaintiff argues that she was entitled to JNOV or, in the alternative, a new trial because the jury's verdict was against the great weight of the evidence. We disagree with both assertions.

A motion for JNOV should be granted only if insufficient evidence was presented to create an issue of fact for the jury. *Heaton v Benton Constr Co*, 286 Mich App 528, 532; 780 NW2d 618 (2009). The trial court must view the evidence and all reasonable inferences arising therefrom in a light most favorable to the nonmoving party and determine whether the facts precluded judgment for the nonmoving party as a matter of law. *Merkur Steel Supply, Inc v Detroit*, 261 Mich App 116, 123-124; 680 NW2d 485 (2004). If the evidence is such that reasonable jurors could differ, JNOV is improper. *Foreman v Foreman*, 266 Mich App 132, 136; 701 NW2d 167 (2005). We review de novo a trial court's decision on a motion for JNOV. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 15; 837 NW2d 686 (2013).

A new trial may be granted on some or all of the issues in a case if the verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). Granting a motion for a new trial on the ground that the verdict is against the great weight of the evidence should be done only when the evidence "preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). Determining whether a verdict is against the great weight of the evidence requires review of the entire body of proofs. "The issue usually involves matters of credibility or circumstantial evidence, but if there is conflicting evidence, the question of credibility ordinarily should be left

for the factfinder. Similarly, the weight to be given to expert testimony is for the jury to decide." *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010). We review for an abuse of discretion a trial court's decision to grant or deny a new trial. *Allard v State Farm Ins Co*, 271 Mich App 394, 406; 722 NW2d 268 (2006). "An abuse of discretion occurs when a court chooses an outcome that is not within the principled range of outcomes." *McManamon v Redford Charter Twp*, 273 Mich App 131, 138; 730 NW2d 757 (2006).

In a medical malpractice case the plaintiff bears the burden of proving: (1) the applicable standard of care; (2) breach of that standard by the defendant; (3) an injury; and (4) proximate causation between the alleged breach and the injury. *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995); see also MCL 600.2912a(2). Expert testimony is required to establish the applicable standard of care and to demonstrate that the defendant breached the standard. *Birmingham v Vance*, 204 Mich App 418, 421; 516 NW2d 95 (1994). Proof of causation requires both cause in fact and proximate cause. Cause in fact requires that the injury would not have occurred but for the negligent conduct. *Haliw v City of Sterling Hts*, 464 Mich 297, 310; 627 NW2d 581 (2001). Cause in fact may be established by circumstantial evidence, but such proof must be subject to reasonable inferences, and cannot consist of mere speculation. An explanation that is consistent with known facts but not deductible from them constitutes impermissible conjecture. *Skinner v Square D Co*, 445 Mich 153, 163-164; 516 NW2d 475 (1994). Proximate cause is that which, in a natural and continuous sequence, unbroken by new and independent causes, produces the injury. *McMillan v Vliet*, 422 Mich 570, 576; 374 NW2d 679 (1985).

Plaintiff's assertion in support of both her argument for a new trial and for JNOV is that the jury's verdict was inconsistent. Plaintiff argues that because the jury found that defendant acted negligently by performing the wrong surgical procedure, it should have concluded that defendant's negligence proximately caused the additional damage she suffered. Specifically, plaintiff contends that the evidence showed that she experienced different and increased pain down her right leg following defendant's surgery, and that she was required to undergo further surgery as a result of his negligence. Plaintiff concludes that the only logical finding the jury could have made was that her increased pain and the necessity for further surgery were proximately caused by defendant's negligence. We disagree.

The jury was presented with conflicting evidence. Plaintiff testified that she began experiencing back pain in 2000 or 2001, and she acknowledged that she also experienced right-sided leg pain before consulting with defendant. Plaintiff testified that her right-sided leg pain became more intense after defendant performed surgery. Steven Lackie, defendant's physician assistant, initially thought plaintiff's right-sided leg pain developed after the surgery, but acknowledged that if plaintiff had a history of such pain, his initial impression was likely incorrect. Plaintiff's expert, Dr. Lustgarten, attributed plaintiff's increased right-sided leg pain to defendant's failure to decompress the nerve and irritation of the nerve during surgery, and opined that defendant breached the standard of care. Dr. Shah, plaintiff's witness, testified that he did not decompress the nerve during surgery because he saw no need to do so, and opined that the nerve could have been stretched during a procedure. Both Dr. Shah and Dr. Rapp, defendant's expert, testified that a nerve could be injured during surgery notwithstanding a surgeon's best efforts to avoid doing so. Dr. Rapp testified that fusion surgery was simply unsuccessful in a certain percentage of patients, and that a history of smoking lessened the chances of success.

The trial court did not abuse its discretion by denying defendant's motion for a new trial. The evidence showed that plaintiff experienced right-sided leg pain both before and after defendant's surgery. Plaintiff's testimony that the pain intensified after the surgery was not disputed, but evidence also showed that neurological worsening was a known risk of spinal surgery and could occur even despite a surgeon's best efforts to avoid it. The jury was presented with evidence that defendant both breached and complied with the standard of care, and that a nerve decompression would or would not have addressed the issue of plaintiff's right-sided pain. Plaintiff acknowledged that she still experienced right-sided leg pain after a third surgery performed in California in 2014. The evidence conflicted, and the jury was entitled to determine what evidence it believed and what weight to give to the experts' testimony. *Dawe*, 289 Mich App at 401. The evidence did not preponderate heavily against the jury's verdict. *Unger*, 278 Mich App at 232. Evidence that plaintiff experienced right-sided leg pain before any surgical intervention by defendant and continued to experience that pain after the surgery supports the jury's conclusion that defendant's negligence did not proximately cause the ongoing pain.

The trial court also did not err in denying plaintiff's motion for JNOV. The evidence set out above, viewed in a light most favorable to defendant, created issues of fact for the jury and made JNOV improper. The undisputed evidence that spinal fusion surgery simply does not succeed in a certain percentage of patients, and that nerve damage can occur despite a surgeon's best efforts, was such that reasonable jurors could disagree.

Plaintiff also argues that the trial court abused its discretion when it admitted into evidence her application for Social Security disability benefits. We disagree.

We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *KBD & Assoc, Inc v Great Lakes Foam Tech, Inc*, 295 Mich App 666, 676; 816 NW2d 464 (2012). A court abuses its discretion if it admits evidence that is inadmissible as a matter of law. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004).

As a general rule, all relevant evidence is admissible. MRE 402. Evidence is relevant if it has the tendency to make the existence of a fact that is consequential to the action more probable or less probable than it would be without the evidence. MRE 401. However, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" MRE 103.

MCL 600.6303(1) states the collateral source rule, in pertinent part, as follows:

> In a personal injury action in which the plaintiff seeks to recover for the expense of medical care, rehabilitation services, loss of earnings, loss of earning capacity, or other economic loss, evidence to establish that the expense or loss was paid or is payable, in whole or in part, by a collateral source shall be admissible to the court in which the action was brought after a verdict for the plaintiff and before a judgment is entered on the verdict.

The term "collateral source" includes Social Security benefits. MCL 600.6303(4). The collateral source rule bars such evidence when introduced for the purpose of mitigating damages. *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 58; 457 NW2d 637 (1990). However, collateral

source evidence may be admissible for other purposes, such as to support an allegation of malingering. See *Rock v Crocker*, 308 Mich App 155, 171-174; 863 NW2d 361 (2014), aff'd in part and vacated in part on other grounds 499 Mich 247; 844 NW2d 227 (2016) (trial court excluded evidence of no-fault benefits sought to be admitted by the defendant to support allegation that the plaintiff was malingering).

Plaintiff argues that the trial court abused its discretion by admitting her application for Social Security disability benefits because it is likely that the jury examined the document and concluded that she had another source of income. We reject this argument. The evidence was not offered for the purpose of establishing a collateral source for an expense for which plaintiff was seeking recovery. Rather, it was offered for its relevance to plaintiff's credibility. Plaintiff testified that she earned approximately $700 a week as a nail technician before defendant operated on her back. Defendant sought to introduce the Social Security disability benefits application, on which plaintiff indicated that she earned $13,000 annually, to impeach this testimony. The trial court admitted the document for its relevance to plaintiff's credibility. "The credibility of a witness is an appropriate subject for the jury's consideration." *Powell v St. John Hosp*, 241 Mich App 64, 72; 614 NW2d 666 (2000). The trial court admitted the evidence for a proper purpose, and thus did not abuse its discretion.

Furthermore, plaintiff's assertion that the jury likely viewed the document and concluded that she had another source of income is based entirely on speculation. Moreover, this argument is relevant only to the issue of damages, but because the jury concluded that defendant's negligence was not a proximate cause of plaintiff's injury, it never reached the issue of damages. For that reason, any error in admitting the document would be harmless. MRE 2.613(A) ("An error in the admission . . . of evidence . . . is not ground for granting a new trial, for setting aside a verdict, or . . . disturbing a judgment . . . unless refusal to take this action appears to the court inconsistent with substantial justice.").

Affirmed.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens