*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CB, by Next Friend and Guardian DEBBIE
MACIKA,

          Plaintiff-Appellant,

v

LIVINGSTON COUNTY COMMUNITY MENTAL
HEALTH,

          Defendant-Appellee.

FOR PUBLICATION
December 7, 2023
9:05 a.m.

No. 363697
Livingston Circuit Court
LC No. 22-000284-AW

Before: HOOD, P.J., and JANSEN and FEENEY, JJ.

HOOD, P.J.

Plaintiff, CB, through his mother and guardian, Debbie Macika, appeals by right the trial court's order denying his petition for a writ of mandamus related to Medicaid-funded benefits. Defendant, Livingston County Community Mental Health (LCCMH), eventually provided the services that CB sought to compel through mandamus; some before the trial court issued its order, and some while this appeal was pending. This rendered the issue of mandamus moot, but not damages. We affirm in part, reverse in part, and remand for further proceedings to address damages.

## I. BACKGROUND

This case arises out of LCCMH's failure to provide CB certain services to which CB was entitled and which LCCMH was required to provide under Medicaid. The underlying facts of this case are not largely in dispute.

CB is a man with cerebral palsy, an intellectual disability, and speech impairments. He is quadriplegic and cannot talk. His mother, Macika, is his guardian. Because of these disabilities, CB was authorized to receive certain Medicaid-funded services, including Community Living Support (CLS) and "respite care services." CLS services are meant to help individuals like CB

remain in their communities and avoid institutionalization.[1]  Respite care services are provided intermittently to relieve the recipient's family during times when they would be providing unpaid care.[2]  Depending on a beneficiary's plan of service, respite care services can be provided in licensed foster care homes, licensed camps, or as in CB's case, in the home.[3]  This Court has previously summarized these Medicaid-funded services as follows:

> Michigan offers funding and support to qualifying individuals with disabilities to help them live independently in their home communities instead of in institutionalized care facilities.  This program is called Community Living Support (CLS) and is authorized by a Medicaid waiver from the federal government called the Habilitation Supports Waiver (HSW).  The CLS program furthers participants' "self-determination by allowing them to structure their own support services based on their medical needs."  The HSW is financed through "capitation procedures," which "means that the federal government provides [prepaid inpatient health plans (PIHPs)] . . . with a fixed amount of funding for each person participating in the CLS program, regardless of how many services the entity ultimately provides to the recipient.  The PIHP then determines how to allocate these funds to recipients."  [*Wiesner v Washtenaw Co Community Mental Health*, 340 Mich App 572, 577; 986 NW2d 629 (2022) (citations omitted; alteration in original).]

The CLS and respite services were part of CB's "Individual Plan of Service (IPOS).  Individuals like CB, who choose to receive CLS services, go through a "person-centered planning process," which results in an IPOS and a corresponding budget for CLS services.  See *Wiesner*, 340 Mich App at 578.  "The IPOS describes the services that have been deemed 'medically necessary' for each recipient based on criteria defined in Michigan's Medicaid Provider Manual."  *Id*. (quotation marks and citation omitted).  The budget ostensibly reflects the costs of the services and supports necessary to implement the IPOS.  Here, this amounted to 25 hours of CLS and 6 hours of respite services each week.  CB's respite services were to be in-home, as opposed to a foster care center or camp.  These services were authorized to start in June 2021.

LCCMH is a community mental health service provider, and was the service provider responsible for CB's services.  It had a prepaid inpatient health plan (PIHP) contract with the Michigan Department of Health and Human Services (MDHHS), the state department responsible for administering Medicaid funds and programing in Michigan, to provide all medically necessary

---

[1] Michigan Medicaid Provider Manual, Behavioral Health and Intellectual and Developmental Disability Supports and Services, p 111-112. Available at https://www.mdch.state.mi.us/dch-medicaid/manuals/MedicaidProviderManual.pdf.

[2] Michigan Medicaid Provider Manual, Behavioral Health and Intellectual and Developmental Disability Supports and Services, p 126. Available at https://www.mdch.state.mi.us/dchmedicaid/manuals/MedicaidProviderManual.pdf.

[3] Michigan Medicaid Provider Manual, Behavioral Health and Intellectual and Developmental Disability Supports and Services, p 127. Available at https://www.mdch.state.mi.us/dchmedicaid/manuals/MedicaidProviderManual.pdf.

services to CB. This Court has previously described the regulatory and organizational background for this relationship:

> The MDHHS "contracts with regional prepaid inpatient health plans ('PIHPs'), which are public managed care organizations that receive funding and arrange and pay for Medicaid services." The MDHHS "has supervisory and policymaking authority over the PIHPs and must ensure that PIHPs retain oversight and accountability over any subcontractors. PIHPs subcontract with community organizations that provide or arrange for mental health services for recipients . . . ." [*Wiesner*, 340 Mich App at 577 (citations omitted; alteration in original).]

In this case, LCCMH was a community mental health service provider and mental health authority that contracted with MDHHS and one of Michigan's ten regional PIHPs to provide Medicaid-funded services to, among others, adults with mental illness or developmental disabilities who lived in Livingston County.[4]

There is no dispute about LCCMH's intended function or that it was the provider responsible for providing CB with services for his disabilities. But CB did not receive his authorized services for approximately two years due to LCCMH's failure or inability to find suitable providers. Although the services were authorized to start in June 2021, CB did not receive CLS services until September 2022, and at-home respite care services until June 2023.

Because of the delay, in March 2022, CB sought and received a "Medicaid Fair Hearing" before an administrative law judge (ALJ). MDHHS delegates authority to the Michigan Office of Administrative Hearings and Rules to hear and issue decisions on behalf of MDHHS. A "Medicaid Fair Hearing" is an administrative hearing that allows beneficiaries (or providers) to contest actions taken by MDHHS, their contracted agencies, or managed care entities. During this process, LCCMH stipulated that the CLS and respite care services at issue were medically necessary and it had not provided them.

On July 8, 2022, the ALJ issued a written decision granting summary disposition in favor of CB. After that decision, LCCMH was required to provide the services as promptly and expeditiously as possible, but not later than 72 hours after the order. See 42 CFR § 428.424(a). In a certification order dated July 18, 2022, one week after the 72-hour deadline, LCCMH stated that it had not been able to comply with the decision and order and that its expected compliance date was "unknown."

In August 2022, in an effort to enforce the ALJ's order, CB filed a complaint for mandamus and ex parte motion to show cause. Through the complaint, CB requested three specific forms of relief. First, he requested the trial court to issue a writ of mandamus compelling LCCMH to provide the services ordered by the ALJ. Second, CB requested that the court issue an order to show cause, ordering LCCMH to answer the complaint within seven days of service and setting a show cause hearing. Finally, he sought damages under MCL 600.4431, including "compensation

---

[4] These sorts of community mental health service providers are defined and authorized under MCL 330.1204 of the Mental Health Code, MCL 330.1001 *et seq*.

for [CB]'s isolation at home and mental suffering" due to LCCMH's failure to timely comply with the ALJ's order.

In September 2022, the trial court held a show-cause hearing, and LCCMH explained that, despite the difficulties in obtaining workers to provide services to CB (and others), it had finally been able to do so. This new worker would begin providing services to CB within days. Accordingly, the trial court adjourned the matter to allow the new worker time to begin.

More than a month later, the parties returned for a follow-up hearing, and CB was satisfied with the new worker with respect to CLS services. However, CB's counsel expressed concern with whether the worker could provide respite services. LCCMH's counsel explained that there were a number of alternatives available for respite services, such as a respite camp or group home. CB's counsel countered that the purpose of the six hours of respite care in CB's plan was to provide services at his home while giving his mother a rest; the respite camp meanwhile would have required CB's mother to drive three hours round trip each week. Regardless, LCCMH's counsel stated that the new worker was willing to provide respite services to CB and that LCCMH would ensure such services were provided by the worker. CB's counsel noted that as of that day, they had yet to receive respite care services.

At the conclusion of the second hearing, the trial court denied CB's request for a writ of mandamus. Without taking evidence, it concluded that LCCMH had "done their duty in providing proper care for this citizen . . . giving the attendant care, and then with the respite care." (According to CB, at the time, LCCMH had yet to provide respite care.) It also stated, "I imagine you both are going to continue to work in good faith to make this thing happen, to get the respite care." The trial court did not explicitly analyze the four-part test for mandamus.[5] It later entered an order denying the writ of mandamus for the reasons stated on the record. The trial court, however, did not address CB's damages claim under MCL 600.4431.

This appeal followed. According to CB, on June 4, 2023, during the pendency of this appeal, LCCMH began providing the respite services required in CB's individual plan of service. CB now describes the mandamus portion of the relief sought through this appeal as moot.

## II. MOOTNESS

Originally, on appeal, CB argued that the trial court abused its discretion by denying his petition for a writ of mandamus. But prior to oral argument on this appeal, CB, through counsel, filed a supplement indicating that LCCMH began providing respite care services in June 2023. (As stated, LCCMH began providing CLS services after CB filed the complaint and motion for show cause.) CB claims this renders his mandamus issue moot. We agree that this development

---

[5] In *Citizens for Higgins Lake Legal Levels v Roscommon Co Bd of Comm'rs*, 341 Mich App 161, 1780179; 884 NW2d 257 (2016), this Court confirmed that "[t]o obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result" (quotation marks and citation omitted).

renders the mandamus issue moot, but not the issue of damages. See *Ziegler v Brown*, 339 Mich 390, 395; 63 NW2d 677 (1954) (explaining that mandamus will be denied when the issue is moot and the writ serves no purpose). See also *Equity Funding, Inc v Milford*, 342 Mich App 342, 352-354; 994 NW2d 859 (2022) (noting that a claim for damages caused by malicious filing of false lien not rendered moot by subsequent discharge of the lien).

## A. STANDARD OF REVIEW

We review for an abuse of discretion the trial court's decision on a writ of mandamus. *Citizens for Higgins Lake Legal Levels v Roscommon Co Bd of Comm'rs*, 341 Mich App 161, 177-178; 988 NW2d 841 (2022). "A court abuses its discretion when its decision is outside the range of reasonable and principled outcomes." *Id*. at 178 (quotation marks and citation omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). "Issues involving mootness are questions of law" that we review de novo. *Equity Funding*, 342 Mich App at 348.

## B. LAW AND ANALYSIS

We are required to address mootness when it arises. *Equity Funding*, 342 Mich App at 349. Regarding mootness and the extent of judicial power, we have previously stated:

> Judicial power pertains to the right of courts of proper jurisdiction to determine actual cases and controversies arising between adversaries. To ensure that the judiciary only exercises "judicial power" and does not usurp the power of other branches of government, Michigan courts and federal courts have developed justiciability doctrines, including mootness, to ensure that cases are appropriately before the court. If an issue is moot, the court may not adjudicate the claim. [*Id.* (citations omitted).]

The issue here is the grant or denial of the writ of mandamus. A writ of mandamus is unnecessary when the underlying issue becomes moot. See *Ziegler*, 339 Mich at 395. See also *Carlson v Wyman*, 189 Mich 402, 403; 155 NW 418 (1915) (demonstrating that a writ of mandamus is unnecessary when the issue becomes moot). Mandamus is a remedy of extraordinary power, but narrowly defined usage. See *Higgins Lake*, 341 Mich App at 178 ( "[M]andamus is an extraordinary remedy and it will not lie to review or control the exercise of discretion vested in a public official or administrative body") (quotation marks and citation omitted; alteration in original). Our Supreme Court stated in *Ziegler v Brown* that "[t]his court has repeatedly held that the writ of mandamus *is one of grace and not of right*, and will be granted only where the duty that it sought to be enforced is clear and positive." *Ziegler*, 339 Mich at 395 (emphasis added). The *Ziegler* Court stated that a writ of mandamus will not be issued "to compel the doing of a useless thing" or "if the question is moot and the granting of a writ of mandamus would serve no purpose . . . ." *Id*.

At this point, issuing the writ would serve no purpose. CB filed suit to compel LCCMH to provide the services in his individual plan of service as confirmed by the ALJ. This included CLS and respite care services. Before the conclusion of the hearing before the trial court, LCCMH began providing CLS services. According to CB's supplemental notice, LCCMH eventually

began providing at home respite care services during the pendency of this appeal. In other words, there is nothing left to compel. Because neither this Court nor the trial court can fashion a remedy related to the complaint for mandamus, the question of the propriety of the trial court's denial of the writ is now moot. Unlike the *issuance* of mandamus, the question of damages under MCL 600.4431 is, as discussed below, very much still alive and an issue on which the trial court may still grant relief. *Cf. Equity Funding*, 342 Mich App at 352-354. As discussed below, on remand, to resolve the damages issue, the trial court must address the propriety of the relief CB sought, even if it cannot issue the writ.

## III. DAMAGES

CB argues that the trial court erred by failing to address whether he was entitled to damages under MCL 600.4431. We agree.

### A. STANDARD OF REVIEW

At the threshold, the parties appear to dispute the standard of review. As noted, we review a trial court's decision on a petition for a writ of mandamus for an abuse of discretion, but questions of law de novo. *Higgins Lake*, 341 Mich App at 177-178. This includes interpretation of a statute. *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016). "A trial court necessarily abuses its discretion when it makes an error of law." *Pirgu*, 499 Mich at 274. LCCMH asserts without citation that the applicable standard of review for damages under MCL 600.4431 is clear error. That is incorrect. It is accurate that "[t]his Court reviews the trial court's determination of damages following a bench trial for clear error." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003) (emphasis added). But this standard does not apply here, where the trial court did not hold a bench trial or evidentiary hearing, or make any determination regarding damages. Rather, the entire portion of CB's claim was left wholly unaddressed.

### B. LAW AND ANALYSIS

CB's damages claim turns on the meaning of MCL 600.4431, a statute authorizing money damages in mandamus actions. Regarding statutory interpretation, this Court has previously stated:

> The goal of statutory interpretation is to determine and apply the intent of the Legislature. The first step in determining legislative intent is to examine the specific language of the statute. If the language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. The provisions of a statute must be read in the context of the entire statute to produce a harmonious whole. This Court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. [*Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 424; ___ NW2d ___ (2022) (quotation marks and citations omitted).]

We may not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018) (quotation marks and citation omitted). A statute must be read as a whole, *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009), and we "must give effect to every

word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory," *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

Here, under its plain terms, the statutory provision at issue, MCL 600.4431, does not limit damages awards to plaintiffs who successfully obtain a writ of mandamus. MCL 600.4431 provides: "Damages and costs may be awarded in an action for mandamus. No damages may be allowed in mandamus against a public officer who, in good faith, acted erroneously." We agree with CB that nothing in the statute's plain language limits its application to the *issuance* of a writ of mandamus. Instead, MCL 600.4431 language provides that damages are permitted "in an *action* for mandamus." Nothing about this language limits damages to a *successful* action for mandamus, which is to say, the issuance of a writ is not a precondition to damages. To hold otherwise would impermissibly add language into the statute. See *McQueer*, 502 Mich at 286.

This interpretation is in harmony with the broader statute. For example, in MCL 600.4411, our Legislature provided for a fine related to mandamus. But it expressly conditioned the $250 fine on "[w]henever mandamus *is directed*," in other words, whenever the writ of mandamus is issued. See MCL 600.4411 (emphasis added). MCL 600.4431 contains no such express language. See *In re MCI Telecom Complaint*, 460 Mich 396, 412; 596 NW2d 164 (1999) ("In general, where statutes relate to the same subject matter, they should be read, construed, and applied together to distill the Legislature's intent."). This is consistent with this Court's prior analysis, albeit in an unpublished opinion, addressing fines related to mandamus. See *Coloma Emergency Med Serv, Inc v Dep't of Community Health*, unpublished per curiam opinion of the Court of Appeals, issued March 6, 2012 (Docket Nos. 300416 and 300599), p 4 ("The imposition of a fine is conditioned on the writ of mandamus, whereas a damage award is not conditioned on the writ of mandamus. If the Legislature had intended to condition an award of damages on the issuance of a writ of mandamus, the Legislature could have so stated in subsection 4431.").[6] For us to condition damages under MCL 600.4431 on success in obtaining a writ of mandamus would not only require us to insert language into MCL 600.4431, but it would require us to render the language in MCL 600.4411 as surplusage.

Although damages under MCL 600.4431 are not conditioned on successfully *obtaining* the writ of mandamus, they are tethered to the *merits* of the underlying mandamus action. In other words, to obtain damages under MCL 600.4431, a plaintiff must have a meritorious claim seeking a writ of mandamus in the first place—even if it is subsequently rendered moot. CB acknowledges, and even suggests, this commonsense limitation. To hold otherwise would be inconsistent with the text, context, and legislative purpose of MCL 600.4431. On its terms, MCL 600.4431 only allows damages "in an action for mandamus." The damages provision is also contained within Chapter 44 of the Revised Judicature Act of 1961, MCL 600.1 *et seq.*, which has four sections all dealing with mandamus actions. Damages, therefore, must be tied to a viable mandamus action. If MCL 600.4431 provided for damages, so long as a plaintiff brought a meritless mandamus action

---

[6] Unpublished opinions of this Court are not binding authority but may be considered for their persuasiveness. See *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359213); slip op at 9.

along with their request, then it would effectively be a standalone damages provision, not tied to any underlying claim. Instead, we conclude that the Legislature did not choose to enact a damages provision unrelated to a viable claim. Rather, it conditioned MCL 600.4431 on a meritorious mandamus claim even if the court does not grant the requested writ.

Contrary to LCCMH's argument, the trial court does not appear to have considered the damages component of CB's claim at all, let alone the good-faith exception embedded in MCL 600.4431. Its discussion of "good faith" was only in reference to the propriety of granting or denying mandamus, not damages. And, although there is a good-faith exception available, it would not apply. MCL 600.4431's good-faith exception applies *only* to "a public officer." See MCL 600.4431. LCCMH is not a public officer. It is an organization. More specifically, LCCMH is a community mental health service provider and mental health authority created pursuant to Michigan's Mental Health Code. MCL 330.1205(9) of the Mental Health Code classifies "a community mental health authority" as "a public governmental body." And the overarching statutory framework that encompasses MCL 600.4431 distinguishes entities like LCCMH from public officers. Compare MCL 600.4431 (providing a good-faith exception for public officers who make an error while acting in good faith) with MCL 600.4411 (providing fines under certain conditions when a court issues mandamus against "any public officer, *body or board*, corporation or corporate officer") (emphasis added). Because LCCMH is a public governmental body, rather than a public officer, public officers within LCCMH might avail themselves of the good-faith defense under MCL 600.4431, but LCCMH remains potentially exposed to the statutorily-authorized damages. Accordingly, the good-faith exception is inapplicable.[7]

Finally, it is immaterial to the question of damages that LCCMH eventually began providing services. See *Mercer v Lansing*, 274 Mich App 329, 330, 334; 733 NW2d 89 (2007) (holding that a plaintiff may be able to recover damages against a defendant "for [its] failure to comply in the past"). See also *Equity Funding*, 342 Mich App at 352-354 (holding that lien discharge mooted claims for declaratory relief and to quiet title but lien discharge did not render moot damages for slander-of-title claim because past damage could still be compensated). CB's damages claim relates to injury incurred during the period that there was no dispute he was entitled to the services, but LCCMH failed to provide them. Therefore, CB could (and can) seek damages for LCCMH's past failure to provide services. See *Intl Union, United Auto, Aerospace & Agricultural Implement Workers of America-UAW v O'Rourke*, 388 Mich 578, 584-585; 202 NW2d 290 (1972) (indicating that mootness of an action for a writ of mandamus does not preclude damages under MCL 600.4431). Holding otherwise would allow defendants to evade damages

---

[7] We also question whether the good-faith exception would be inapplicable for another reason. LCCMH never argued that it acted *erroneously*. MCL 600.4431's good-faith exception only applies when a public officer acted in good faith *and* acted erroneously. From the outset, LCCMH never contested its legal duty or CB's right to the services at issue. Critically, at the first hearing before the circuit court, LCCMH's counsel explicitly stated that it *did not* act erroneously. Rather, LCCMH argued that it was simply unable to provide services until a new worker was hired. This may provide an independent basis for the unavailability of the good-faith exception under MCL 600.4431.

solely by complying with their legal duties after a plaintiff filed suit, but before a trial court decides whether to issue the writ.

The trial court's decision on mandamus did not resolve the issue of damages for past noncompliance, or the noncompliance related to respite services that continued well into this appeal. The trial court therefore erred by failing to address CB's request for damages under MCL 600.4431. Acknowledging that the court cannot issue the writ because there is nothing left to compel, on remand, the trial court nonetheless must address the merits of whether CB had a valid claim for mandamus in order to address the remaining question of whether CB is entitled to damages and costs for LCCMH's past noncompliance.

## IV. CONCLUSION

We affirm in part, reverse in part, and remand for the trial court to determine whether plaintiff is entitled to damages pursuant to MCL 600.4431 and the extent of those damages if any. We retain jurisdiction.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney

# Court of Appeals, State of Michigan

CB V LIVINGSTON COUNTY COMMUNITY MENTAL HEALTH

Docket No.    363697

LC No.       22-000284-AW

Noah P. Hood
  Presiding Judge

Kathleen Jansen

Kathleen A. Feeney
  Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 21 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded.  As stated in the accompanying opinion, on remand, the trial court must consider whether plaintiff is entitled to damages under MCL 600.4431 and the extent of those damages if any.  In doing so, the trial court must consider whether plaintiff would have been entitled to relief if his petition for the writ of mandamus were not rendered moot by defendant's subsequent compliance with its legal duty.  The proceedings on remand are limited to these issues.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellants shall file with this Court copies of all orders entered on remand.

Appellant may file a supplemental brief within 21 days of the trial court's issuance of its findings on remand.  Appellee shall have 21 days thereafter to file a reply brief.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 7, 2023
Date

_____
Chief Clerk